UNITED STATES of America

v.

BALLY MANUFACTURING COR-PORATION et al.

Crim. No. 71-530.

United States District Court,
E. D. Louisiana.

June 21, 1972.

412

Gerald J. Gallinghouse, U. S. Atty., Michael H. Ellis, Asst. U. S. Atty., New Orleans, La., John Wall, K. Eric Gisleson, Dept. of Justice, for plaintiff.

Paul R. Connolly, Robert L. Weinberg, John W. Vardaman, Jr., of Williams, Connolly & Califano, Washington, D. C., David Schippers, Chicago, Ill., A. R. Christovich, Jr., of Christovich & Kearney, New Orleans, La., for Bally and O'-Donnell.

Guy Johnson, New Orleans, La., for Boasberg and Pace.

Philip A. Foto, New Orleans, La., for Boasberg.

Virgil M. Wheeler, Jr., New Orleans, La., for Callery, Rooney, and S. J. Marcello.

F. Irvin Dymond, New Orleans, La., for Elms.

Cecil M. Burglass, Jr., Lawrence L. Lagarde, Jr., New Orleans, La., for Lagarde, Sr.

Louis C. LaCour, Gerard H. Schreiber, New Orleans, La., for Nims.

Milton E. Brener of Garon & Brener, New Orleans, La., for Pierce.

A. G. Bucaro, D. T. Horton, New Orleans, La., for Caracci.

Eustace J. Shearman, III, New Orleans, La., for DiFatta.

Jack Wasserman, Washington, D. C., George S. Hesni, New Orleans, La., for V. J. Marcello.

CHRISTENBERRY, District Judge.

In this memorandum opinion the court rules on all pretrial motions thus far filed by these 14 defendants who were charged on December 1, 1971, in a 29-page indictment consisting of one conspiracy count and 15 substantive counts alleging violations of Title 18 U.S.C. §§ 371, 1952, 1955, and 2. Although defendants have filed slightly more than a hundred separate motions, generically there are far fewer and treatment here will be by generic category with all motions denied except where expressly granted.

### The Setting

Count I charges all defendants with combining, conspiring, confederating and agreeing together and with each other to violate 18 U.S.C. § 1952 [1] which makes it

1. 18 U.S.C. § 1952 provides in part:
 § 1952. *Interstate and foreign travel or transportation in aid of racketeering enterprises*
 (a) Whoever travels in interstate or foreign commerce or uses any facility in interstate or foreign commerce, including the mail, with intent to—
 (1) distribute the proceeds of any unlawful activity; or
 (2) commit any crime of violence to further any unlawful activity; or
 (3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity,

unlawful for a person to use interstate commerce with the intent to promote and facilitate an unlawful activity and thereafter to perform or attempt to perform acts to promote and facilitate this unlawful activity, all in violation of 18 U.S.C. §§ 371 and 2. Twenty-seven overt acts are alleged in furtherance of the conspiracy which is alleged to have existed from on or before December 2, 1966, until the defendants were charged on June 30, 1971. The definition of an "unlawful activity" includes a business enterprise involving gambling in violation of the law of the state in which the gambling offense is committed.

The conspiracy described in count I alleges that the Bally Manufacturing Corporation (hereafter Bally) and its president, William T. O'Donnell (hereafter O'Donnell), of Chicago, Illinois, would manufacture and cause to be manufactured machines designed primarily for gambling; that the gambling devices would be transported in interstate commerce from the place of manufacture in Illinois to the other defendants in Louisiana; that the other defendants would engage in separate business enterprises consisting of the owning and placing of the gambling devices in public places for use by the general public; that all defendants knew that illegal gambling would be conducted on these machines in violation of Louisiana Revised Statutes § 14:90 (La.Crim.Code art. 90); that defendants Bally and O'Donnell would also instruct the other defendants in the repair and upkeep of the machines and would also furnish parts therefor when required; and that defendants would otherwise aid and abet each other in this allegedly illegal scheme.

Counts II through IX are substantive in nature, each charging Bally, O'Donnell, Louis M. Boasberg, and at least one other defendant with a substantive violation of 18 U.S.C. §§ 1952 and 2 relative to a named business enterprise (different in each count), which enterprise is described as being an unlawful activity involving gambling on Bally "bingo" gambling-type pinball machines in violation of La.R.S. § 14:90.

Counts X through XVI each charge Bally, O'Donnell, Boasberg, and at least one other defendant with a substantive violation of 18 U.S.C. §§ 1955 and 2. Essentially, section 1955 makes it unlawful for one to conduct, finance, manage, supervise, direct or own an illegal gambling business. Here it is alleged that the unlawful gambling was consummated with Bally "bingo" gambling-type pinball machines in violation of La.R.S. § 14:90 and that these gambling businesses (a separate business enterprise is described in each of counts X through XVI) had been in substantially continuous operation for more than 30 days and that each business had five or more persons involved in its conduct, management, financing, supervision, direction, and ownership.

At the outset, it is noted that most of the defendants by motion have asked that they be allowed to adopt all motions of their codefendants and that they be permitted to file subsequent motions as deemed necessary. These perfunctory motions are granted and in the following discussion the court's reference to "defendants" is meant to include all of the 14 defendants charged in this case.

---

and thereafter performs or attempts to perform any of the acts specified in subparagraphs (1), (2), and (3), shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

(b) As used in this section "unlawful activity" means (1) any business enterprise involving gambling, liquor on which the Federal excise tax has not

been paid, narcotics or controlled substances (as defined in section 102(6) of the Controlled Substances Act), or prostitution offenses in violation of the laws of the State in which they are committed or of the United States, or (2) extortion, bribery, or arson in violation of the laws of the State in which committed or of the United States.

## I. MOTIONS TO DISMISS THE INDICTMENT

### *Alleged Federal and State Statutory Conflicts*

First the court will deal with defendants' motion to dismiss the indictment on the ground that an erroneous view of the Louisiana anti-gambling statute, La.R.S. § 14:90,[2] was presented to the grand jury by the government. This is a threshold question of no small importance as the "unlawful activity" proscribed by 18 U.S.C. §§ 1952 and 1955 is described in every count as arising from defendants' violation of La.R.S. § 14:90. Both § 1952 and § 1955 are directed only at gambling enterprises which violate state law and thus it will be incumbent upon the government to prove that the defendants conspired to violate or violated Louisiana law. No other state law than La.R.S. § 14:90 is referred to in any count.

Defendants argue at length that other Louisiana statutes, *i. e.*, La.R.S. § 47:-375(E) and La.R.S. § 15:31,[3] specifically regulate the use of pinball machines and provide that they are not unlawful gambling devices; that the government misinformed the grand jury as to the proper Louisiana law by portraying state law as proscribing merchandise and cash payoffs on Bally gambling-type pinball machines while, according to the defendants, only cash payoffs are illegal; that as a result of misinterpreting state law to the grand jury, the indictment is defective by charging the commission of acts both legal and illegal;

2. La.R.S. § 14:90 (Supp.1972) (also found at La.Crim.Code art. 90) provides in full:

§ 90. *Gambling*

Gambling is the intentional conducting, or directly assisting in the conducting, as a business, of any game, contest, lottery, or contrivance whereby a person risks the loss of anything of value in order to realize a profit.

Whoever commits the crime of gambling shall be fined not more than five hundred dollars, or imprisoned for not more than six months, or both.

3. La.R.S. § 47:375(E) provides:

E. For the purpose of this Section a "coin-operated mechanical amusement device" is any machine or device, other than those described in Subsections E and F of this Section, operated by depositing a coin, token, slug, or similar object for the placing of the machine or device in readiness to play and which automatically scores or otherwise determines the result of the play, regardless of whether or not the machine or device is entirely automatic or mechanical in every phase of its operation. All such mechanical amusement devices and all machines or devices subject to tax under Sub-sections A, B and C of this Section, and which do not return to the operator or player thereof anything but free additional games or plays or which through the exercise of the skill of the operator or player, returns to the operator or player a merchandise prize, shall not be deemed to be or classed as gambling

devices, and neither this Section nor any other Act shall be construed to prohibit same.

La.R.S. § 15:31 provides:

§ 31. *Confiscation and destruction of gambling devices; exceptions*

A. All officers of the State of Louisiana are hereby authorized and empowered and it is made mandatory and compulsory on their part to confiscate and immediately destroy all gambling devices or machines used for gambling that may come to their attention and that they may find in operation. The ownership of a federal gambling stamp for the machine or device shall be absolute proof of its use for purposes of gambling, except as set forth in Subsection B of this Section, and neither the State of Louisiana nor any subdivision, agency, agent, or enforcement officer shall be liable civilly or criminally for the destruction of any gambling device or gambling machine for which a federal gambling stamp has been issued.

B. This Section shall not apply to any games, machines, or other devices, where there is no cash automatic payout and where there is an element of skill involved in the playing, including specifically coin-operated bowling games, shuffle alleys, pinball games, mechanical baseball games, electronic ray guns, mechanical guns, digger type machines, iron claws, and all similar types of coin-operated amusement games, as licensed under Subsections A, B, C, and E of R.S. 47:375.

and that the applicable federal statute is not 18 U.S.C. § 1952 (the "Travel Act"), but 15 U.S.C. §§ 1171–1178 (the "Gambling Devices Act of 1962") which permits the importation of gambling-type pinball machines into a state if that state specifically allows such machines to become operative. As this argument goes, since Louisiana permits machines which pay off in merchandise, the proviso in 15 U.S.C. § 1172 governs and, accordingly, the indictment must fall for lack of the "illegal activity" essential to a charge brought under 18 U.S.C. § 1952 and § 1955.

■ After careful study, the court is convinced that defendants' motions for dismissal of counts I through IX of the indictment due to allegedly conflicting state and federal laws are without merit and must be denied. I find that La.R.S. § 14:90 proscribes gambling on gambling-type machines where payoffs are in merchandise or cash or both if the payoffs are determined by an element of chance.

■ First, La.R.S. § 15:31 and § 47:375(E) are inapplicable to the machines allegedly involved in this indictment because for those state statutes to come into operation, the payoffs must be due to "the exercise of the skill of the operator or player," La.R.S. § 47:-375(E) or occur "where there is an element of skill involved in the playing." La.R.S. § 15:31(B). The indictment in describing the machines, however, states in count I, paragraph C. (1) that these machines were "designed and manufactured primarily for use in con-

nection with gambling, and which when operated may entitle a person to receive, as a result of the application of an element of chance, any money or property." Whether the government can sustain its burden of proof on this issue is a question of fact to be submitted to the jury; it does not present a basis for dismissing the indictment.[4]

The important point is that these allegedly gambling-type pinball machines do ostensibly at least, come within the prohibitory sweep of La.R.S. § 14:90. In Gandolfo v. Louisiana State Racing Commission, 227 La. 45, 78 So.2d 504 (1954), the Louisiana Supreme Court addressed itself to the state's anti-gambling statutes. It held that the provision in the state constitution which provides that "[l]otteries and the sale of lottery tickets are prohibited in this State," La. Const. art. 19, § 8, is self-executory and constitutes a prohibitory law on the subject of lotteries. Furthermore, the state supreme court noted that it is La.R.S. § 14:90 that attaches criminality to any activity involving the prohibited lotteries. That court, the highest in the state, then definitely brought pinball machines within the sweep of § 14:90 in the following statement:

"Lottery has been defined as a scheme for the distribution of prizes by lot or chance. It is upon that theory that this court has held slot machines, pinball machines and bank nites [sic] lotteries within the meaning of certain state statutes and city ordinances. State v. Barbee, 1937, 187 La. 529, 175 So. 50; City of New Or-

---

4. Within La.R.S. § 47:375, it would seem that subparagraph F, not E, is the applicable statute as regards these allegedly gambling-type pinball machines. La.R.S. § 47:375(F) provides:

F. Every person engaged in the business of operating, or who permits to be operated in his place of business, any so called "slot" machine or similar machine or device which is operated by means of inserting or depositing a coin, token, slug, or similar object, or several of such, and which, by application of the element of chance, may de-

liver, or entitle the person playing or operating the machine or device to receive cash, premium, merchandise, or tokens, shall pay a tax of one hundred dollars for each such machine or device. Payment of the tax imposed by this Sub-section shall not be held to legalize the operation of any machine or device defined herein which is prohibited by law. This Sub-section shall not be held to repeal any provisions of any law prohibiting the operation, possession or use of any such machine or device.

leans v. Collins, 1900, 52 La.Ann. 973, 27 So. 532; State v. Lasselle, 1923, 154 La. 168, 97 So. 389. . . ."

227 La. at 59, 78 So.2d at 509.

■ Concerning the alleged statutory conflict between 18 U.S.C. § 1952 and the Gambling Devices Act of 1962, 15 U.S.C. §§ 1171–1178, the court has examined these statutes, their histories, and their constructions, and finds that the indictment invokes the proper statutes for the type of unlawful activity described in the indictment. Defendants argue that the Gambling Devices Act is the exclusive criminal statute governing the interstate shipment of these Bally machines and that it is inapplicable because of one of its exempting provisos. The fallacy of this contention soon becomes apparent. The proscribed gambling device is described in 15 U.S.C. § 1171(a) (2) as:

> "any other machine or mechanical device . . . designed and manufactured primarily for use in connection with gambling, and (A) which when operated may deliver, as the result of the application of an element of chance, any money or property, or (B) by the operation of which a person may become entitled to receive, as the result of the application of an element of chance, any money or property . . . ."

The next section, 15 U.S.C. § 1172, makes it unlawful to transport such a gambling device in interstate commerce with the important proviso "[t]hat it shall not be unlawful to transport in interstate . . . commerce any gambling device into any State in which the transported gambling device is specifically enumerated as lawful in a statute of that State." This proviso can be summarily treated in that no Louisiana law, including La.R.S. § 15:31 and La.R.S. § 47:375, either specifically or impliedly legalizes gambling devices where the possibility of winning is "the result of the application of an element of chance." 15 U.S.C. § 1171 (a) (2).

■ In addition, there was no reason why the government should have had to charge the defendants with violating 15 U.S.C. § 1172 rather than 18 U.S.C. § 1952. The defendants' claim that the former deals more specifically with the subject matter is not substantiated by a reading of the statutes, their legislative histories, or the indictment. Indeed, sections 1171–1178 of Title 15 appear to have been enacted to complement 18 U.S. C. § 1952. The one prohibits the interstate transportation of gambling devices and the other (18 U.S.C. § 1952) makes unlawful the use of facilities in interstate commerce with the intent to facilitate illegal gambling enterprises. Those counts in the present indictment charging violations of section 1952 do not merely charge defendants with knowingly transporting gambling devices in interstate commerce; rather it is alleged that such interstate transportation constituted a use of interstate commerce facilities with the intent to facilitate the promotion of an unlawful activity defined to be a gambling business in contravention of this state's criminal law. There is no conflict between 18 U.S.C. § 1952 and 15 U.S.C. § 1172; they are aimed at the eradication of the same type of activity, i. e., that aspect of organized crime that is nourished on illegal gambling profits.

■ Because this court does not find that these Bally gambling-type pinball machines would be allowed in interstate commerce under any proviso of 15 U.S.C. § 1172, it is unnecessary to reach the question of whether the government could charge defendants under 18 U.S.C. § 1952 if they could not be charged under 15 U.S.C. § 1172. In the interest of clarity, however, the following quotation is taken as a fair and accurate statement of statutory construction with regard to 18 U.S.C. § 1952:

> "To combat wide and nefarious interstate racketeering the Congress has made certain combinations of acts unlawful: for instance, interstate travel with intent to promote an unlawful activity, plus, thereafter the performance of any act to facilitate the carrying on of such activity. It is not re-

quired that the travel be in itself a criminal act, nor that the subsequent act be itself, unlawful, if it does in truth facilitate the carrying on."

United States v. Azar, 243 F.Supp. 345, 350 (E.D.Mich.1964).[5]

### Alleged Grand Jury Defects

Defendants assail the validity of the indictment because of supposed defects involving the grand jury. These allegations include the following: prejudicial pre-indictment publicity with a request to examine the grand jurors individually; failure of the government to obtain the concurrence of twelve or more grand jurors on any or all of the 16 counts in contravention of Rule 6(f) of the Federal Rules of Criminal Procedure; the presence of governmental attorneys in the grand jury room while the grand jury was deliberating and voting; and failure of the government to present any evidence to the grand jury to warrant the indictment.

■ While not denying that the grand jury system can unfortunately be used with reckless disregard for a citizen's rights when it is advised by a malicious and unethical prosecutor, there is not a scintilla of evidence to substantiate any of these defense allegations and it is my finding that this grand jury investigation which extended over a period of about four months was conducted in a proper and professional manner in all respects.

After careful consideration of counsels' memoranda, oral arguments, and exhibits, the motion to dismiss because of biased grand jurors is denied. It is not enough for the defendants to allege simply that prominent or massive publicity attended their case as it proceeded from the arrest of some of the defendants on June 30, 1971, until the indictment of all of them on December 1, 1971.

In fact, there was no showing of such massive or prolonged publicity and barring specific evidence of actual prejudice among the grand jurors, of which the record is completely devoid, there will be no relief granted. Beck v. Washington, 369 U.S. 541, 545–555, 82 S.Ct. 955, 8 L.Ed.2d 98 (1962); United States v. Osborn, 350 F.2d 497, 506–507 (6th Cir. 1965), aff'd, 385 U.S. 323, 87 S.Ct. 429, 17 L.Ed.2d 394 (1966); Estes v. United States, 335 F.2d 609, 613 (5th Cir. 1964), cert. denied, 379 U.S. 964, 85 S.Ct. 656, 13 L.Ed.2d 559 (1965); United States v. Hoffa, 205 F.Supp. 710, 717 (S.D. Fla.1962), appeal dismissed, 309 F.2d 680 (5th Cir. 1962), cert. denied, 371 U.S. 892, 83 S.Ct. 188, 9 L.Ed.2d 125 (1962).

■ The publicity that this case engendered in its pre-indictment stage was natural and inevitable. The government's conduct, however, was strictly within the guidelines of this court's standing order of September 19, 1969, entitled "Rules Regarding 'Free Press-Fair Trial.'" That is to say, there has been no indication that a member of the prosecution ever made a public extrajudicial statement that went beyond the public record or that went beyond the need to inform the public of the general nature of the case. The mere fact of pre-indictment publicity does not vitiate an indictment. The reason for the immediate attention of the public and the media to this case was that six of these codefendants (Boasberg, Callery, Elms, Lagarde, Nims, and Pierce) were arrested and charged simultaneously with the Orleans Parish District Attorney and two high-ranking police officers on June 30, 1971. Those three officials, however, were charged in a separate indictment along with six of the present defendants (named above) for conspiring to obstruct state or local law enforcement in violation of 18 U.S.C. § 1511.[6]

---

5. For more discussion on the history and purpose of 18 U.S.C. § 1952, see United States v. Nardello, 393 U.S. 286, 89 S.Ct. 534, 21 L.Ed.2d 487 (1969) (prosecution for extortion under the Travel Act).

6. United States v. Garrison et al., Crim. No. 71–542 (E.D.La., indictment filed Dec. 3, 1971).

Additionally, the fact that the arrest on June 30, 1971, of some of the defendants in this case was pursuant to a detailed 113-page affidavit filed and signed by an Internal Revenue agent is not on its face a reason to find prejudicial pre-indictment or pretrial publicity. Likewise, the serialization of that public record in the local newspapers for several days does not present circumstances under which this court can act to grant relief to defendants. Certainly, the publicity for a short time was widespread and unfavorable to those six defendants and no doubt the affidavit was partially responsible. Nevertheless, because the institution of federal criminal proceedings against state and local officials often strikes sensitive public nerve chords, it appears to have been prudent of the government to initiate the unveiling of its investigation with an ample showing of evidence.

The motion asking that the court hold an evidentiary hearing at which the defendants might examine individually members of the grand jury is denied summarily. This represents a blatant attempt at a fishing expedition as again movants have no specific or actual basis for such a request. This is not a challenge of a grand juror's legal qualifications as provided for in Rule 6(b) (2) of the Federal Rules of Criminal Procedure, but an effort to establish evidence of prejudice where none is known to exist.

Similarly, without any foundation for the request, defendants allege that the indictment was returned without the grand jury adhering to the Rule 6(f) requirement that "[a]n indictment may be found only upon the concurrence of 12 or more jurors." This defense argument alleges that only the foreman felt that the true bill should be returned. Such a motion as this is handled simply by the Clerk of Court, pursuant to a court order, allowing the defendants to examine the "concurrence slip" filed in open court by the foreman and members of the grand jury with the indictment pursuant to Rule 6(c). This slip has already been made available for defendants' examination and inspection. Recent authority for this procedure is found in United States v. Bullock, 448 F.2d 728 (5th Cir. 1971). Only if the concurrence slip record was not available would it be necessary to hold a hearing to show propriety by substituted proof. In accordance with the clear language of Rule 6(c) and its restatement in *Bullock, supra*, 448 F.2d at 729, the defense contention that the record must disclose that 12 or more grand jurors voted on and concurred in their finding as to each defendant on each count is unfounded. The statutory requirement is only that 12 or more grand jurors must concur in "the finding of every indictment." This includes all counts and all defendants therein. Accordingly, as was stated in open court at the time of oral argument on April 13, 1972, these motions to dismiss the indictment are denied.

The defense motion that seeks dismissal of the indictment on the ground that government attorneys were present with the grand jury while it was deliberating or voting in violation of Rule 6(d) is spurious and meritless. The basis for the motion is an affidavit by defense attorney Cecil M. Burglass, Jr. in which the affiant avers simply that "he believes that government attorneys and agents were present in the grand jury room while said jury was deliberating and voting on the indictment." It is curious that an attorney would execute such an affidavit on a belief which has no factual foundation. In reply the United States Attorney has submitted an affidavit which states in part that ". . . no undue influence or improper tactics were executed by himself or any other governmental attorney, that the indictment was read, in its entirety, to the grand jury prior to deliberations, and that no one other than the jurors was in the grand jury room while the jurors were deliberating or voting on the indictment." The unsubstantiated defense affidavit is legally insufficient and the motion is denied. United States v. Calise, 217 F.Supp. 705, 709–710 (S.D.

N.Y.1962); United States v. Brumfield, 85 F.Supp. 696, 705 (W.D.La.1949).

■ The allegation in a similar defense motion that avers that the grand jury had insufficient evidence on which to indict the defendants is also unsubstantiated and fails to surmount the presumption of validity that is accorded an indictment returned by "a legally constituted and unbiased grand jury." Costello v. United States, 350 U.S. 359, 363, 76 S.Ct. 406, 409, 100 L.Ed. 397 (1956); Blumenfield v. United States, 284 F.2d 46 (8th Cir. 1960), cert. denied, 365 U.S. 812, 81 S.Ct. 693, 5 L.Ed.2d 692 (1961); United States v. Nunan, 236 F.2d 576, 594 (2d Cir. 1956), cert. denied, 353 U.S. 912, 77 S.Ct. 661, 1 L.Ed.2d 665 (1957). Accordingly, all motions urging dismissal on this ground are denied. The same reasoning and the same authority dictate the denial of those defense motions, also speculative and conclusionary, which would have the court dismiss the indictment due to alleged coercion of the grand jury. This baseless allegation asserts that the presence of seven governmental attorneys in the grand jury room just prior to the commencement of deliberations had a coercive effect on the jurors and contributed to their return of the indictment. There being no basis in fact or in law for such a motion, it is denied. In summary, all motions urging that the indictment be quashed due to defects relating to the grand jury are hereby denied, as are all requests to examine the *grand jury minutes* or to examine the grand jurors individually or collectively whether *in camera* or in an open court hearing.

### Duplicity of the Conspiracy Count

■ Here the court is concerned with those defense motions that contend that count I, charging all 14 defendants with conspiring to violate 18 U.S.C. §§ 371 and 2, is fatally defective because it encompasses more than one conspiracy. The government correctly takes the position that this is a question to be disposed of at trial because the indictment on its face charges only one conspiracy. Green v. United States, 332 F.2d 788 (5th Cir.

1964). If the evidence offered at trial produces a variance in proof (by showing multiple conspiracies) which affects "the substantial rights of the parties," then the defendants will be entitled to an acquittal on count I. United States v. Morado, 454 F.2d 167, 170 (5th Cir. 1972), quoting Kotteakos v. United States, 328 U.S. 750, 775, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946); United States v. Walker, 453 F.2d 1205, 1206 (5th Cir. 1972). At trial it will be incumbent upon the government to prove beyond a reasonable doubt that there was a single conspiracy and that "the illegal agreement in question [had] 'a common end or single unified purpose.'" *Morado, supra,* 454 F.2d at 171. An instruction by the court to the jury at trial to this effect will be proper. In addition, cautionary instructions can prevent the possible dangers of transference of guilt by having the jury consider the evidence as to each defendant's alleged role in the conspiracy and make findings as to each individual separately. As the Supreme Court stated in *Kotteakos, supra,* 328 U.S. at 776, 66 S.Ct. at 1253:

> "[E]xtraordinary precaution is required, not only that instructions shall not mislead, but that they shall scrupulously safeguard each defendant individually, as far as possible from loss of identity in the mass."

■ The fact that the alleged conspiracy covered a period of about four and a half years is of no consequence in distinguishing a single from a multiple conspiracy. "A single agreement to commit an offense, or even a number of offenses, does not become several conspiracies because the activity continues over a period of time." United States v. Lloyd, 425 F.2d 711, 712 (5th Cir. 1970); accord United States v. Nasse, 432 F.2d 1293, 1297 (7th Cir. 1970). Accordingly, the defendants' motions urging dismissal of count I due to duplicity are denied.

### Duplicity, Vagueness, and Other Attacks on Counts II–IX

■ Defendants have moved to dismiss counts II through IX because of duplicity, vagueness, and failure to al-

lege substantive crimes. Because these motions are similar in approach and because they are directed to the same group of counts, they will be treated here together.

The gist of the duplicity and vagueness argument is that within the time period alleged in each count there were multiple uses of interstate commerce facilities so that it is impossible for defendants to know which instance the government is referring to in each count. *A fortiori,* as the argument goes, defendants cannot perceive what they must do in order to defend themselves properly against such open-ended and vague charges. Thus, because many unlawful uses of interstate commerce are encompassed within each count, and because of the vagueness problem which this automatically creates, defendants assert that dismissal is mandatory. To the contrary, there is ample authority for the drafting of counts such as these. United States v. Daley, 454 F.2d 505, 509 (1st Cir. 1972); United States v. Kelley, 395 F.2d 727 (2d Cir.), cert. denied, 393 U.S. 963, 89 S.Ct. 391, 21 L.Ed.2d 376 (1968); United States v. Cohen, 35 F.R.D. 227, 231–232 (N.D.Cal.1964), aff'd, 378 F.2d 751, 754 (9th Cir.), cert. denied, 389 U.S. 897, 88 S.Ct. 217, 19 L.Ed.2d 215 (1967).

As in the *Cohen* case, the offenses alleged in these counts contemplate a continuing course of conduct. This does not, however, suggest an adequate reason for dismissal; rather the solution is for the government to furnish sufficient information to defendants pursuant to either bills of particulars or Rule 16 pretrial discovery so that the specific instances of illegal conduct which the government expects to prove will be clearly illuminated. This the United States Attorney offered and agreed to do at the time of oral argument.

The court also disagrees with the defense argument that counts II through IX must be dismissed for vagueness in violation of the Sixth Amendment and Rule 7(c) of the Federal Rules of Criminal Procedure. I find these counts to be properly drafted in that mention is made of all elements of the offense charged in each count (violations of 18 U.S.C. §§ 1952 and 2); defendants are adequately informed of their alleged transgressions and, hence, the preparatory steps necessary for their defense; and there is no possibility of their being again subjected to prosecution for the same offenses. United States v. Debrow, 346 U.S. 374, 376, 74 S.Ct. 113, 98 L.Ed. 92 (1953); Hagner v. United States, 285 U.S. 427, 431, 52 S.Ct. 417, 76 L.Ed. 861 (1932). The motions that would have the court dismiss counts II through IX because of duplicity and vagueness must therefore be denied.

Movants also erroneously assert that counts II through IX fail to charge any substantive offenses and that these counts are merely overt acts of the conspiracy charged in count I. Alternatively, and again mistakenly, it is argued that these counts constitute duplicate conspiracies. The court has already found that these counts do not suffer from vagueness and, following the same reasoning and authority, it is reiterated here that counts II through IX on their face properly set forth substantive allegations. It is a well-established criminal law precept that "the commission of a substantive offense and a conspiracy to commit it are separate and distinct crimes." Pereira v. United States, 347 U.S. 1, 11, 74 S.Ct. 358, 364, 98 L.Ed. 435 (1954). Movants are charged in count I with conspiracy to violate 18 U.S.C. §§ 371 and 2. The essence of the alleged crime of conspiracy in count I is the agreement. "The essential elements of a conspiracy are an agreement by two or more persons to combine for an illegal purpose and an overt act by one member in furtherance of the agreement . . . ." United States v. Lowry, 456 F.2d 341, 344 (5th Cir. 1972). In counts II through IX, on the other hand, the crime in each count is the alleged commission of certain proscribed acts with the requisite intent. Although it is possible for conspiracy and substantive charges to be void due to merger that

possibility does not arise here. Pinkerton v. United States, 328 U.S. 640, 643–644, 66 S.Ct. 1180, 1182, 90 L.Ed. 1489 (1946).

> "Moreover, it is not material that overt acts charged in the conspiracy counts were also charged and proved as substantive offenses. . . . 'If the overt act be the offense which was the object of the conspiracy, and is also punished, there is not a double punishment of it.' The agreement to do an unlawful act is even then distinct from the doing of the act."

*Id.* Accordingly, the motions to dismiss counts II through IX for failure to state substantive crimes or because they duplicate the conspiracy count or because they are overt acts of the conspiracy charged in count I are denied.

### Timeliness of Counts I–IX

 Defendants urge dismissal by the court under Rule 48(b), Federal Rules of Criminal Procedure, of counts I through IX because of prejudicial delay in returning the indictment. Alternatively, it is argued that dismissal is required due to expiration of the five-year statute of limitations provided for by 18 U.S.C. § 3282. Movants state that a Justice Department official was informed in 1963, that pinball machines, such as are involved in this case, would be shipped into Louisiana unless defendants were advised that such shipments were unlawful. Because, according to this allegation, no objections were made by the government in 1963, it is now contended that this prosecution is barred by oppressive and purposeful delay. This motion is denied because of movants' failure to note the material differences between the Gambling Devices Act of 1962, 15 U.S.C. §§ 1171–1172, which is concerned only with the interstate shipments of certain type machines whereas defendants are charged, *inter alia*, with violation of the Travel Act, 18 U.S.C. § 1952, which proscribes the use of interstate commerce with the intent to promote and facilitate an unlawful activity and thereafter to perform or attempt to perform acts which would promote the unlawful activity. Finding no basis for the allegation of unnecessary delay under Rule 48(b), the alternative motion stating that the statute of limitations bars this prosecution is also denied as the rule in this Circuit is that " '[a]ny delay occurring between commission of the offense and commencement of prosecution is controlled exclusively by the applicable Statute of Limitations.' " Oden v. United States, 410 F.2d 103, 104 (5th Cir.), cert. denied, 396 U.S. 839, 90 S.Ct. 100, 24 L.Ed.2d 90 (1969). In the indictment *sub judice*, the counts alleging violations of 18 U.S.C. § 1952 cover a period of less than the five-year prescriptive period.

### Constitutionality of 18 U.S.C. § 1955

 The defendants have moved to dismiss counts X through XVI of the indictment which allege violations of 18 U.S.C. § 1955 and § 2, on the ground that Title VIII, § 803 (codified at 18 U.S.C. § 1955) of the Organized Crime Control Act of 1970 (P.L. 91–452), 84 Stat. 937, is unconstitutional. Congress enacted section 1955 after finding "that illegal gambling involves widespread use of, and has an effect upon, interstate commerce and the facilities thereof." Organized Crime Control Act of 1970, § 801. Section 1955 (§ 803 of the Act) provides in pertinent part as follows:

(a) Whoever conducts, finances, manages, supervises, directs, or owns all or part of an illegal gambling business shall be fined not more than $20,000 or imprisoned not more than five years, or both.

(b) As used in this section—

(1) "illegal gambling business" means a gambling business which—

(i) is a violation of the law of a State or political subdivision in which it is conducted;

(ii) involves five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business; and

(iii) has been or remains in substantially continuous operation for a period in excess of thirty days or has a gross revenue of $2,000 in any single day.

(2) "gambling" includes but is not limited to pool-selling, book-making, maintaining slot machines, roulette wheels or dice tables, and conducting lotteries, policy, bolita or numbers games, or selling chances therein.

(3) "State" means any State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, and any territory or possession of the United States.

(c) If five or more persons conduct, finance, manage, supervise, direct, or own all or part of a gambling business and such business operates for two or more successive days, then, for the purpose of obtaining warrants for arrests, interceptions, and other searches and seizures, probable cause that the business receives gross revenue in excess of $2,000 in any single day shall be deemed to have been established.

(d) * * * *

(e) * * * *

Defendants have advanced various alternative arguments as to why section 1955 must fall, none of which, however, have yet to survive judicial scrutiny. Essentially these challenges allege that the statute violates the Tenth Amendment, encroaches upon judicial functions by stating its findings of effect on commerce, exceeds the power granted to Congress under the commerce clause of the Constitution, denies the due process of law guaranteed by the Fifth Amendment, and is fatally vague in contravention of the Sixth Amendment.

In recent months other federal courts have refuted most of these contentions in sustaining the constitutionality of section 1955. Some of these cases include the following: United States v. Riehl, 460 F.2d 454 (3d Cir. 1972); Schneider v. United States, 459 F.2d 540 (8th Cir. 1972); United States v. Palmer, 465 F. 2d 697 (6th Cir. 1972); United States v. Iannelli, 339 F.Supp. 171, 180 (W.D. Pa.1972); United States v. Sacco, 337 F.Supp. 521 (N.D.Cal.1972); United States v. Aquino, 336 F.Supp. 737 (E.D. Mich.1972); United States v. Politi, 334 F.Supp. 1318, 1322 (S.D.N.Y.1971); United States v. Harris, 332 F.Supp. 315 (N.D.Tex.1971). Because the views of this court accord harmoniously with those expressed in the above opinions, it is unnecessary here to trace laboriously the legislative history of the Organized Crime Control Act of 1970 or expostulate at length on the breadth of the congressional commerce power. I find section 1955 to be eminently constitutional.

██ All of the defendants' attacks on section 1955 are essentially resolved by a determination of whether Congress exceeded the constitutional grant of power to regulate commerce. U.S.Const. art. I, § 8, cl. 3. In this light it is seen that the Tenth Amendment and the commerce clause are mutually exclusive, that is, if Congress could legitimately utilize the commerce power to enact section 1955 to regulate certain gambling activities, then the Tenth Amendment does not come into play. United States v. Darby, 312 U.S. 100, 123–124, 61 S.Ct. 451, 85 L.Ed. 609 (1941).

██ I find, based on the Supreme Court jurisprudence which accompanies the commerce power, from Gibbons v. Ogden, 22 U.S. (9 Wheat.) 1, 6 L.Ed. 23 (1824), through Perez v. United States, 402 U.S. 146, 91 S.Ct. 1357, 28 L.Ed.2d 686 (1971), that section 1955 deals with a subject over which congressional regulation is proper. As the Court said in Wickard v. Filburn, 317 U.S. 111, 125, 63 S.Ct. 82, 89, 87 L.Ed. 122 (1942):

"[E]ven if appellee's activity be local and though it may not be regarded as commerce, it may still, whatever its nature, be reached by Congress if it exerts a substantial economic effect on interstate commerce, and this irrespective of whether such effect is what might at some earlier time have been defined as 'direct' or 'indirect.'"

After ample investigation and findings of its own, Congress made it a federal

crime, via section 1955, to conduct, finance, manage, supervise, direct, or own a gambling business which exists in violation of the state's law in which it is found. However, to have the requisite effect on interstate commerce and to come within the ambit of section 1955, the gambling business must be of a certain size and in substantially continuous operation. If these criteria are satisfied then it does not matter that the particular business is purely intrastate in its operation because by statutory definition, based on congressional inquiry, such a business as part of a class of activities involves a per se effect upon or use of interstate commerce or its facilities.

The Supreme Court has repeatedly upheld the congressional prerogative to determine that an entire class of activities affects commerce; e. g., Maryland v. Wirtz, 392 U.S. 183, 192–193, 88 S.Ct. 2017, 20 L.Ed.2d 1020 (1968), and once that determination has been made by Congress, "[t]he only question for the courts is then whether the class is 'within the reach of the federal power.'" Id. at 193, 88 S.Ct. at 2022. Accord, Perez, supra, 402 U.S. at 152–153, 91 S.Ct. 1357; Heart of Atlanta Motel, Inc. v. United States, 379 U.S. 241, 247, 85 S.Ct. 348, 13 L.Ed.2d 258 (1964); Katzenbach v. McClung, 379 U.S. 294, 304, 85 S.Ct. 377, 13 L.Ed.2d 290 (1964). Consequently, it is unnecessary that the government show in every prosecution brought under section 1955 that there is an interstate commerce effect. That determination has been made by Congress and will not be disturbed here. What the government must show at trial, however, is that the elements of section 1955 are satisfied by these allegedly illegal gambling businesses; that is, there must be a violation of state law (La.R.S. § 14:90); the business must be conducted, financed, managed, or owned wholly or partially by five or more persons; and the business must have been or remain "in substantially continuous operation for a period in excess of thirty days or [have] a gross revenue of $2,000 in any

single day." To establish these elements of the crime is to establish all that is necessary to show that interstate commerce is affected. As the Court stated in Perez, supra, 402 U.S. at 154, 91 S.Ct. at 1361:

"Where the class of activities is regulated and that class is within the reach of federal power, the courts have no power 'to excise, as trivial, individual instances' of the class. Maryland v. Wirtz, 392 U.S. 183, 193."

The Perez case is conceptually closely related to the instant case inasmuch as there the Court sustained the constitutionality of a statute which regulated, on the basis of the commerce power, extortionate credit transactions ("loan sharking") of a purely local nature. Like section 1955, the anti-loan sharking statute was passed to reduce the disasterous impact of organized crime on interstate commerce. The Court stated simply: "Extortionate credit transactions, though purely intrastate, may in the judgment of Congress affect interstate commerce." Perez, supra, 402 U.S. at 154, 91 S.Ct. at 1361. That statute, again like section 1955, was preceded by voluminous hearings and studies, even though such particularized findings are not required before Congress may act. Id. 402 U.S. at 156, 91 S.Ct. 1357.

Of course, what is required in order that the statute be upheld—and this leads to the Fifth Amendment challenge—is that there exists a rational basis for finding that illegal gambling affects interstate commerce and, if such a basis is found, that the means chosen to eradicate the evil be reasonable and appropriate. I find that this congressional finding was rational and that section 1955 constitutes a valid exercise of the power vested in Congress under the commerce clause. Similarly, the means chosen to combat the evil are carefully aimed at a particular, well-defined type of gambling activity. Schneider v. United States, supra; Sacco, supra, 337 F. Supp. at 526. On this basis I find the statute constitutional on its face and as applied to these defendants.

■ In reaching this conclusion, the court does not accept defendants' argument that section 1955 has an irrational basis or represents an unreasonable remedy because it seeks to regulate gambling only in states which prohibit gambling while allowing the same type of activity to persist in states which allow gambling. The rule is simply that a variation in state laws does not in any way nullify or render unreasonable a federal anti-gambling statute which incorporates state law. This court agrees with the other federal tribunals which have consistently found no Fifth Amendment violation on this basis. United States v. Schwartz, 398 F.2d 464, 467 (7th Cir. 1968), cert. denied, 393 U.S. 1062, 89 S.Ct. 714, 21 L.Ed.2d 705 (1969); Spinelli v. United States, 382 F.2d 871, 890 (8th Cir. 1967), rev'd on other grounds, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); Turf Center, Inc. v. United States, 325 F.2d 793, 795–796 (9th Cir. 1963). These cases dealt with the Travel Act, 18 U.S.C. § 1952, but three other federal courts have reached the same conclusion in ruling on this question with regard to section 1955. *Schneider, supra; Sacco, supra*, 337 F.Supp. at 527; *Aquino, supra*, 336 F.Supp. at 740.

■ It is further asserted that section 1955 unconstitutionally encroaches on a gambler's right to travel from a state in which gambling is legal into an anti-gambling state without suffering a loss of his profession. This argument also has been advanced and refuted in cases involving 18 U.S.C. § 1952. Gilstrap v. United States, 389 F.2d 6, 8 (5th Cir.), cert. denied, 391 U.S. 913, 88 S.Ct. 1806, 20 L.Ed.2d 652 (1968); United States v. Corallo, 281 F.Supp. 24, 28 (S.D.N.Y.1968). Section 1955 prohibits a person from engaging in an illegal gambling business and any effect the statute has on interstate travel arises only if a person acts in contravention of the statute while traveling. Certainly there is no violation of section 1955 unless a person engages in the conduct or management of a certain well-defined gambling business. The constitutional right to travel is subordinated "to the right of Congress to regulate interstate commerce when the travel involves the use of an interstate facility for illicit purposes." United States v. Gerhart, 275 F.Supp. 443, 451 (S.D.W.Va.1967).

Vagueness and overbreadth in violation of the Fifth and Sixth Amendments are also advanced as reasons why section 1955 should be voided and the indictment dismissed. Except for the contention, advanced specifically by defendant John Elmo Pierce, concerning the proper meaning to be assigned the word "conduct" when read in conjunction with the statutory five-persons requirement, the court will not dwell on these arguments. In fact, a fair reading of the entire statute against the considerable backdrop of jurisprudence on statutory construction leaves no doubt that the statute on its face is a clear and definite statement of a law which Congress was empowered to enact. Section 1955 does not forbid "the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application . . . ." Connally v. General Construction Co., 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926).

■ Defendant Pierce argues resourcefully that even if the statute has facial validity it is, nevertheless, unconstitutional as applied to him. He contends that in order for his business to have the requisite five persons involved in the conduct, financing, management, supervision, direction, or ownership it is necessary to look to the owners of the establishments in which his pinball machines are located, that is, the "location owners." I find that the inclusion of the location owners as persons assisting in the conduct or supervision of the business does not place an unconstitutional stress or strain on section 1955. As the Sixth Circuit Court of Appeals stated in United States v. Palmer, 465 F.2d 697 p. 699 (6th Cir. 1972):

"Appellants' other contentions are equally without merit. They urge that the five persons engaged in their busi-

ness were employees and could not be included among those who 'conduct, finance, manage, supervise, direct or own all or part of such business . . . .' However the Senate Committee Report on the Act specifically states that the term 'conduct' refers to both 'high level bosses and street level employees.' "

To sustain defendant Pierce's argument would create an illogical, uncalled for loophole in the enforcement of section 1955. It would mean that the owner of an illicit gambling business could insulate himself from the reach of this statute by simply having less than five persons working solely for the gambling business while, simultaneously, he might have innumerable location owners to accommodate and pay off on his many gambling machines. As defendant Pierce concedes, a synonym for "conduct" is "carrying on," and it is the government's argument that evidence to be offered at trial will show that the location owners actively participated in the carrying on of Pierce's allegedly illegal gambling business. The government claims that the location owners, although primarily in the retail liquor business, were integral to the conduct of the gambling businesses in that they would allegedly promote and encourage illegal gambling, pay off all winnings on the machines, receive reimbursement of such payoffs from a defendant-machine owner or his representative, and, finally, receive a percentage of the profits. This is a traditional *modus operandi* for organized crime of all types. The five-person requirement clearly encompasses location owners although, of course, it is for the government to prove the alleged connection and relationship between machine owner and location owner at trial. This motion, like all other motions to dismiss the indictment due to the unconstitutionality of 18 U.S.C. § 1955, is denied.

### Sufficiency of Counts X–XVI

■ For the following reasons movants seek the dismissal of counts X through XVI: failure to allege in each count all elements of the allegedly violated state law (La.R.S. § 14:90); failure to describe the manner in which state law was violated; failure to describe in detail defendants' unlawful activities; failure to name the individuals who constituted the five-persons requirement of 18 U.S.C. § 1955; and failure to present evidence to the grand jury that five persons were involved in the allegedly illegal gambling businesses. There being no legal substance to any of these contentions, all motions contesting the technical validity of counts X through XVI are denied.

A comparison of these counts with 18 U.S.C. §§ 1955 and 2 indicates that all elements of the offenses are properly set forth and that the relevant state law is adequately alleged. Lastly, the court finds that these counts contain sufficient information to apprise defendants of what is necessary for their defense and that a judgment resulting from this prosecution will bar any subsequent attempt to prosecute defendants for the same offenses. United States v. Debrow, *supra*; Hagner v. United States, *supra*. Under these standards of sufficiency the counts are properly drawn. On this same basis the fact that the indictment does not name the five persons necessary for a charge under section 1955 is of no moment; such evidentiary details are not properly included in an indictment. Rule 7(c) specifies that the indictment "shall be a plain, concise and definite written statement of the essential facts constituting the offense charged." This and the other requirements of Rule 7(c) were fulfilled. Compare United States v. Anzelmo, 319 F.Supp. 1106, 1120–1121 (E.D.La.1970). The allegation that the grand jury was not presented with evidence of five-man operations is just as baseless as were the similar attacks made on the indictment in general due to supposed grand jury defects. See page 422 *supra*. For the same reasons this motion is denied.

### Miscellaneous Motions to Dismiss

■ The motion to dismiss the indictment due to misjoinder of counts

and misjoinder of parties is denied. Even if the vice of misjoinder should be found to exist, dismissal is simply not the remedy. United States v. Goodman, 285 F.2d 378, 379 (5th Cir. 1960), cert. denied, 366 U.S. 930, 81 S.Ct. 1651, 6 L. Ed.2d 389 (1961). Consideration of alleged misjoinder awaits that part of this memorandum which will deal with severance and joinder.

 Defendants' sole remaining motion to dismiss alleges that those counts specifying violations of 18 U.S.C. § 1955 are vitiated under the constitutional doctrine which prohibits ex post facto laws. Title 18 U.S.C. § 1955 or section 803 of the Organized Crime Control Act of 1970 became effective on October 15, 1970. Each of counts X through XVI charge violations of section 1955 "from on and before October 15, 1970 through" a specified date in excess of thirty days. There is no question but that federal criminal liability attaches only from October 15, 1970; nevertheless, it is permissible to refer in the indictment to a time prior to the date on which section 1955 became operative in order to demonstrate an extant and continuing gambling business. United States v. Kubacki, 237 F.Supp. 638, 643 (E.D.Pa.1965). Accordingly, the motion to dismiss on the ground that section 1955 as applied is an ex post facto law is denied. The jury will, of course, be instructed that no criminal liability under section 1955 can attach until on and after October 15, 1970.

## II. MOTIONS TO COMPEL ELECTION AND FOR SEVERANCE

 Defendants ask that the court order the government to elect between proceeding on 18 U.S.C. § 1952 (counts II through IX) or 18 U.S.C. § 1955 (counts X through XVI) on the basis that separate prosecutions of the same gambling businesses under these two statutes cannot be sustained. The black-letter law which is dispositive of this motion states:

> "The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not."

Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932); accord, United States v. Beacon Brass Co., 344 U.S. 43, 45, 73 S.Ct. 77, 97 L.Ed. 61 (1952). The proof required for these defendants to be validly convicted under section 1952 is not the same as the proof necessary to convict under section 1955. The obvious differences in proof encompass, *inter alia,* the use of interstate commerce facilities under section 1952 and the five-persons or size requirement of section 1955. Also, because the specific purposes of the statutes differ and because nowhere does there appear any evidence of a congressional intent that the statutes should not be used simultaneously against the same gambling businesses, there is no basis for requiring an election and, accordingly, the motion must be denied.

Movants also seek a severance of counts and defendants, alleging misjoinder under Rule 8 and prejudicial joinder under Rule 14, Federal Rules of Criminal Procedure. Dealing first with the alleged misjoinder under Rule 8, the test to be applied is found in paragraph (b) which allows within one indictment (as well as within a single count but not necessarily) the naming of two or more defendants " . . . if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." This differs from the standard of Rule 8(a), allowing joinder of offenses of "the same or similar character" which is inapplicable here because of the presence of multiple defendants. United States v. Roselli, 432 F.2d 879, 898 (9th Cir. 1970).

 Applying the test of Rule 8(b) this sixteen-count indictment is a model of the proper joinder of parties and offenses. Count I charges that all defendants participated in a single conspiracy to violate 18 U.S.C. § 1952. This initial

conspiracy count is followed by eight counts alleging substantive violations of section 1952 which were committed pursuant to the conspiracy. That counts I through IX, therefore, comply with the series requirement of Rule 8(b) is manifestly clear. Gordon v. United States, 438 F.2d 858, 878 (5th Cir.), cert. denied, 404 U.S. 828, 92 S.Ct. 139, 30 L.Ed.2d 56 (1971); King v. United States, 355 F.2d 700, 704 (1st Cir. 1966); United States v. Addonizio, 313 F.Supp. 486, 498 (D.N.J.1970), aff'd, 451 F.2d 49 (3d Cir. 1972).

Similarly, Rule 8(b) presents no obstacle to counts X through XVI. Again, count I alleges that all defendants conspired to use interstate commerce with the intent to facilitate the carrying on of unlawful gambling businesses and thereafter performed acts to facilitate the carrying on of such enterprises. Counts X through XVI, alleging substantive violations of 18 U.S.C. § 1955, charge the same defendants, except Caracci and Difatta, as were charged in the count I conspiracy with unlawfully conducting illegal gambling businesses. It appears to be no coincidence that each allegedly illicit business named in count I is also named at least once in counts X through XVI, except for the New Orleans Coin Machine Co. Thus, although not every defendant participated in every act constituting each joined offense, there is present the requisite series of acts constituting offenses which permits this joinder of defendants and offenses in one indictment. *Roselli, supra,* 432 F.2d at 899; Tillman v. United States, 406 F.2d 930, 934 (5th Cir. 1969). Finally, even if the indictment on its face did not show that all defendants allegedly participated in a series of acts constituting the offenses charged, as I am convinced a fair reading of it does, the government would nevertheless be permitted to establish such connexity via bills of particulars, Rule 16 pretrial discovery, and evidence to be put on at trial. See United States v. Florio, 315 F.Supp. 795, 797 (E.D.N.Y.1970).

Alternatively, defendants seek a severance under Rule 14 due to prejudicial joinder of defendants and offenses. The determination of prejudice and the disposition of such a motion rests in the sound discretion of the trial judge. Opper v. United States, 348 U.S. 84, 95, 75 S.Ct. 158, 99 L.Ed. 101 (1954); United States v. Baggett, 455 F.2d 476, 477 (5th Cir. 1972); United States v. Bedgood, 453 F.2d 988, 991 (5th Cir. 1972); United States v. Blanchette, 453 F.2d 859 (5th Cir. 1972). At this time all defense allegations of prejudice due to joinder are speculative and without any substantial foundation on which the court would be warranted in granting relief. The court feels that the benefit to the efficient administration of criminal justice which a single trial affords far outweighs the risk of possible and unsubstantiated prejudice. Again, the court will rely on cautionary instructions where necessary to limit the evidence to the relevant defendants. United States v. Kelly, 349 F.2d 720, 756 (2d Cir. 1965), cert. denied, 384 U.S. 947, 86 S. Ct. 1467, 16 L.Ed.2d 544 (1966). This will not present a great problem, however, since the same evidence will largely determine the proof of all charges. *Cf.* Milam v. United States, 322 F.2d 104, 110 (5th Cir. 1963), cert. denied, 377 U.S. 911, 84 S.Ct. 1174, 12 L.Ed.2d 181 (1964); United States v. Wolfson, 294 F.Supp. 267, 275–276 (D.Del.1968); United States v. Bonanno, 177 F.Supp. 106, 113 (S.D.N.Y.1959), rev'd on other grounds *sub nom.* United States v. Bufalino, 285 F.2d 408 (2d Cir. 1960).

The defense contention that a severance is mandated by the well-known and often misunderstood case of De Luna v. United States, 308 F.2d 140 (5th Cir. 1962), is devoid of merit. In Gurleski v. United States, 405 F.2d 253, 264 (5th Cir. 1968), cert. denied, 395 U.S. 977, 89 S.Ct. 2127, 23 L.Ed.2d 765 (1969), the Fifth Circuit distinguished *De Luna* as follows:

"The principal case relied on [*De Luna*] involved a situation where the

interest [*sic*] of the co-defendants were severely conflicting. The court noted the non-cooperation between attorneys for the co-defendants and the attempts by each defendant throughout the trial to shift culpability to the other. The evidence in the instant case is to the contrary in that counsel for all defendants cooperated fully in urging the same objections and incorporating or joining common motions, pleas and points of errors. No defendant attempted to implicate only the other defendants. Thus, the telling consideration of *De Luna* is not present in this case."

Accord, United States v. Baggett, 455 F.2d 476, 477 (5th Cir. 1972); United States v. Wilson, 451 F.2d 209, 215 (5th Cir. 1971); United States v. Hyde, 448 F.2d 815, 831 (5th Cir. 1971); United States v. Sklaroff, 323 F.Supp. 296, 323 (S.D.Fla.1971). Because there is neither antagonism among these defendants nor any mutually exclusive theories of guilt *De Luna* is inapplicable, and the situation does not arise where it becomes the duty of counsel for a testifying defendant to comment on the failure of one or more codefendants to also testify. A pretrial order directing that those defendants who testify or their counsel shall not be permitted to comment on the failure of codefendants to do so will be proper. For the foregoing reasons all motions for a severance are denied. At this time the court also denies the premature motion of defendant Vincent Joseph Marcello who seeks to be severed due to an allegedly permanent state of ill health.

## III. MOTIONS TO SUPPRESS

Defendants have moved for the suppression of all evidence obtained by the government pursuant to a subpoena duces tecum directed to the TAC Amusement Company on the basis that defendant Lagarde's Fifth Amendment right against self-incrimination was violated thereby. This contention was previously and unsuccessfully raised when the subpoena was served on TAC initially during the grand jury investigation which resulted in this indictment. TAC, formerly a corporation but now (since September 1, 1967) a Louisiana partnership of which Lagarde is a partner, concedes that an incorporated enterprise, no matter how closely held, cannot assert the Fifth Amendment. Wilson v. United States, 221 U.S. 361, 382–383, 31 S.Ct. 538, 55 L.Ed. 771 (1911); Hale v. Henkel, 201 U.S. 43, 74–75, 26 S.Ct. 370, 50 L.Ed. 652 (1906).

■■■■■ For the reasons given in United States v. White, 322 U.S. 694, 701, 64 S.Ct. 1248, 88 L.Ed. 1542 (1944), and more particularly in *In re* Mal Brothers Contracting Co., 444 F.2d 615 *passim* (3d Cir.), cert. denied, 404 U.S. 857, 92 S.Ct. 106, 30 L.Ed.2d 99 (1971), and United States v. Silverstein, 314 F.2d 789, 791–792 (2d Cir.), cert. denied, 374 U.S. 807, 83 S.Ct. 1696, 10 L.Ed.2d 1031 (1963), the motion to suppress must be denied. It should be noted that the court adopts the well-reasoned rationale of the above-cited opinions with some slight hesitation in view of the possible abuse to Fifth and Ninth Amendment rights which can result from prosecutorial expediency and relatively unlimited investigatory power. No such abuse or expediency, however, has been shown in this case. Therefore, relief for the movants is unwarranted in view of the dominant theory that the Fifth Amendment safeguard is a personal right which does not extend to a business such as TAC. This result is buttressed by the entity characterization of a Louisiana partnership, Smith v. McMicken, 3 La.Ann. 319, 322 (1848); Comment, Formation and Nature of Partnership, 45 Tul.L.Rev. 331, 347 (1971), as well as a realistic view of modern business practices. Accordingly, the motion to suppress the evidence procured by the grand jury through a subpoena duces tecum directed to TAC is denied.

An additional motion to suppress was filed by defendant Boasberg and directed toward all evidence obtained by agents of the Federal Bureau of Investigation in an interview on January 26, 1972. This

interview occurred almost two months after the indictment was returned. Because the government has asserted that neither direct nor indirect information derived from the interview will be used in this prosecution, the motion is dismissed as moot.

## IV. DISCOVERY AND RELATED MOTIONS

### Jencks Act

The defendants' motions for the pretrial production of the grand jury testimony or other statements or reports made by governmental witnesses is denied. The so-called Jencks Act, 18 U.S.C. § 3500(a),[7] offers no sustenance to these requests in that it states that the government is not legally compelled to produce a transcript (or a signed summarized statement) of such testimony until *after* a witness has testified on direct examination at trial. The same is true of any other statements or reports made by such witnesses for the government. Palermo v. United States, 360 U.S. 343, 349, 79 S.Ct. 1217, 3 L.Ed.2d 1287 (1959); see Dennis v. United States, 384 U.S. 855, 870–871, 86 S.Ct. 1840, 16 L.Ed. 2d 973 (1966). Defendants have requested the material either from 10 to 30 days in advance of trial, and the government has countered by offering to make the statements or transcripts available the day before the applicable prosecution witness testifies.

Because this is a multi-defendant case in which numerous witnesses will probably be called, it is obvious that access to Jencks Act statements only after direct examination would result in numerous and lengthy interruptions which I feel would operate to the detriment of the court and all parties. However, the government's offer, which I consider reasonable, will alleviate such unwieldy disruptions. In addition, the government's

proposal is in accordance with the enlightened pretrial procedure recommended by the Judicial Conference of the United States in Report on Recommended Procedures in Criminal Pretrials, 37 F. R.D. 95, 102 (1964).

### Brady Material

■ Relying on Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), defendants have moved for production and inspection prior to trial of all evidence in possession of the government, including the testimony of all grand jury witnesses as well as their names, addresses, and other statements made to governmental agents, which may possibly be favorable to the defense. First, the government correctly argues that the requests for statements or testimony given before the grand jury by governmental trial witnesses fall under the Jencks Act, 18 U.S.C. § 3500, as discussed above in this opinion.

■ Similarly, *Brady* is not authority for such open-ended pretrial discovery demands. In short, these particular motions have neither constitutional nor statutory underpinnings and must be denied. In affirming a district court that had also denied such a request, the Sixth Circuit recently stated:

"*Brady* did not deal with pretrial discovery. It concerned only prosecutorial *suppression* of evidence known to be crucial to the defense of the accused. In that case request had been made by defendant for statements made by an accomplice. The Government responded by furnishing to defendant some statements but withheld the most vital one. The Court likened the suppression to the Government's procuring a conviction on known perjured testimony.

"Amendments to the Federal Rules of Criminal Procedure were adopted

7. This legislation, a congressional response to Jencks v. United States, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957), was amended by the Organized Crime Control Act of 1970 (P.L. 91–452), 84 Stat. 926. The word "statement" as used in section 3500(a) was broadened by the amendment (section 3500(e) (3)) to include "a statement, however taken or recorded, or a transcription thereof, if any, made by [a] witness to a grand jury."

by the Supreme Court in 1966, several years after *Brady* was decided. Although the notes of the Advisory Committee on Rules cite a number of cases under Rule 16 dealing with pretrial discovery, *Brady* was not included therein. Rule 16 contains no provision for the type of pretrial discovery as was attempted here."

United States v. Moore, 439 F.2d 1107, 1108 (6th Cir. 1971). The cases which accord with the above sentiments are legion; *e. g.*, United States v. Harris, 458 F.2d 670 (5th Cir. 1972); United States v. Jordan, 399 F.2d 610, 615 (2d Cir.), cert. denied, 393 U.S. 1005, 89 S.Ct. 496, 21 L.Ed.2d 469 (1968); Archer v. United States, 393 F.2d 124, 126 (5th Cir. 1968); North American Rockwell Corp. v. N.L.R.B., 389 F.2d 866, 873 (10th Cir. 1968); United States v. American Oil Co., 286 F.Supp. 742, 753–754 (D.N.J.1968). Accordingly, in view of the jurisprudence, the absence of specificity or prejudice, and because of the material which will be made available under the Jencks Act and under Rule 16 of the Federal Rules of Criminal Procedure, the motions for the government to make available all material possibly favorable to the defendants are denied. This denial, however, is without prejudice and it is understood by the court that prior to trial the government as required by due process will turn over any evidence favorable to an accused if such evidence is material to the issues. Should the prosecution be unable to decide on the materiality or exculpatory nature of the evidence, then the court stands ready to make such a determination *in camera.*

### Bills of Particulars

 Each defendant has moved for a bill of particulars in accordance with Rule 7(f) of the Federal Rules of Criminal Procedure. In connection with these motions, it is to be remembered that the court has already found the indictment to be legally sufficient in terms of Rule 7.[8] The information requested in these motions is either repetitive of the requests made pursuant to Rule 16 or simply is information which, in my opinion, the government is not required to produce. The disposition of pretrial motions for bills of particulars, of course, rests in the sound discretion of the nisi prius court, Overton v. United States, 403 F.2d 444, 446 (5th Cir. 1968), and in delineating the purpose and scope of this device the Fifth Circuit in Dillen v. Wainwright, 449 F.2d 331, 332 (5th Cir. 1971), has recently stated:

"In federal prosecutions, the bill of particulars does not have the function of providing detailed disclosure of the government's evidence in advance of ˙trial. All that is necessary is that the defendant be advised of any essential detail which may have been omitted from the indictment."

Accord, Wilkins v. United States, 376 F.2d 552, 563 (5th Cir.), cert. denied, 389 U.S. 964, 88 S.Ct. 342, 19 L.Ed.2d 379 (1967); Downing v. United States, 348 F.2d 594, 599 (5th Cir.), cert. denied, 382 U.S. 901, 86 S.Ct. 235, 15 L.Ed.2d 155 (1965). Because of the reasonable, indeed very liberal, discovery that is wisely permitted the defendants under Rule 16, which is dealt with below in this opinion, the requests in these motions are denied, except to the extent that they are allowed elsewhere.

### Rule 16: Discovery and Inspection

Discovery motions pursuant to Rule 16 of the Federal Rules of Criminal Procedure have been filed by each defendant. Many of the requests lodged under Rule 16 have been discussed elsewhere and will not be dealt with again here. If a request for discovery is not specifically approved either here or in another section it is to be considered denied. Respecting these motions the government has readily agreed to disclose all of the materials specified in paragraph (a) of Rule 16. This will allow defendants to inspect and/or copy their own written or re-

---

8. *See* pages 423 and 428 *supra.*

corded statements which may be in the possession, custody, or control of the prosecution; the results or reports of any scientific tests or experiments performed in the investigation of this case; and the recorded testimony of those defendants who testified before the grand jury.

In addition, the government has not objected to certain requests which fall under Rule 16(b). This includes the inspection and/or copying of all documents, books, papers, photographs, and objects which are within the control of the government and which the government will offer as evidence at trial. This offer, of course, does not extend to internal governmental documents, reports, or memoranda made in connection with the investigation or prosecution of this case. Nor, as the rule states, will defendants be permitted access to statements made by present or prospective governmental witnesses (other than a defendant) to agents of the government except as provided for by the Jencks Act, 18 U.S.C. § 3500.

The above material which is to be produced for inspection and/or copying includes, but is not limited to, the names and descriptions of the applicable gambling devices and parts transported in interstate commerce, what interstate commerce facilities were used and how, the places where these machines were located for gambling purposes on the dates mentioned in the overt acts of the conspiracy count (count I), and statements and correspondence of the defendants relative to the illegal gambling activity. This information together with other material to be made available under Rule 16(a) and (b) and the information that appears on the face of the indictment will ensure that the defendants can adequately prepare their defense.

Without a greater showing of particularity and materiality, the court at this time will not invoke Rule 16(c) and thus the granting of defendants' requests for pretrial discovery will not be conditioned on a reciprocal turnover of material by the defendants to the government.

The court considers the defendants' primary discovery requests to concern the numerous surreptitiously recorded conversations which allegedly were obtained through the consent of one of the parties to each of the overheard conversations. With regard to this evidence, the government has offered to file with the court one complete set of tape recordings with a verbatim transcript thereof. This will cover all electronic surveillance undertaken in this case which contains the voice of any defendant. While the court does not doubt that the government will fulfill its offer, it is nevertheless ordered that this material be filed with the Clerk of Court not later than 30 days from the date of this order with the proviso that such evidence remain sealed unless and until needed at trial, except that attorneys for the defendants and the government will be permitted access to the material. These precautions are taken to avoid possibly prejudicial pretrial publicity.

■■■ Bally, the only corporate defendant in this case, has moved under Rule 16(a) (1) and (a) (3) for discovery of the statements and grand jury testimony of any of its present or former employees. This discovery will be ordered only to the extent that the government must produce such statements and grand jury testimony of those Bally employees or agents who were associated with the moving corporation when such testimony or statements were given or when they appeared before the grand jury pursuant to subpoenae duces tecum directed to Bally records and documents. United States v. Zirpolo, 288 F.Supp. 993, 1021 (D.N.J.1968); United States v. American Oil Co., 286 F.Supp. 742, 753 (D.N.J.1968); United States v. Aeroquip Corp., 41 F.R.D. 441, 446 (E.D. Mich.1966).

The similar requests made by the other defendants for the discovery of statements or testimony of past and present officers, employees, or agents of the allegedly illegal gambling businesses with which they are or were affiliated are denied. Those companies were not made

defendants in this case and the sought after testimony or statements were not rendered by defendants. In addition, as the government contends, these employees, past or present, are potential witnesses in the presentation of the government's case in chief. Such discovery is not contemplated in Rule 16 or elsewhere.

■ Under Rule 16(b) the defendants seek the names and addresses of all witnesses that the prosecution plans to call at the trial as well as a detailing of any prior felony convictions that such witnesses may have. Only if the offenses charged were capital would movants be entitled to a list of witnesses. 18 U.S.C. § 3432. It is my opinion based on the nature of the charges and the type of investigation leading up to this indictment that it would be unwise for a list of witnesses to be furnished the defendants prior to trial. Furthermore, this ruling will not hinder effective defense preparation. The Fifth Circuit recently said that "it is not an abuse of discretion for the trial court to deny the defense the names of government witnesses, whether requested by motion for Bill of Particulars under Rule 7(f), or by a motion for discovery under Rule 16(b) . . . ." United States v. Baggett, 455 F.2d 476, 477 (5th Cir. 1972); accord, O'Neal v. United States, 411 F.2d 131, 138 (5th Cir.), cert. denied, 396 U.S. 827, 90 S.Ct. 72, 24 L.Ed.2d 77 (1969); Downing v. United States, 348 F.2d 594, 599 (5th Cir.), cert. denied, 382 U.S. 901, 86 S.Ct. 235, 15 L.Ed.2d 155 (1965). If the government need not disclose in advance the identity of its witnesses, then, *a priori*, the related motion asking for information as to all felony convictions incurred by any witness should be denied. This is information that is not discoverable under Rule 16(b). *E. g.*, United States v. Condor, 423 F.2d 904, 910 (6th Cir.), cert. denied, 400 U.S. 958, 91 S.Ct. 357, 27 L.Ed. 2d 267 (1970). Nevertheless, the government has agreed to reveal any convictions material to the issue of credibility if it is knowledgeable of such convictions.

In summary, all motions for pretrial discovery under Rule 16 are denied except to the extent and in the respects that they have been expressly granted; and it is ordered that the government furnish defendants with the information it agreed to furnish and also the information to which the court has found the defendants entitled.

## V. OTHER DEFENSE MOTIONS

### A.

Defendants, fearing the use of unlawful governmental surveillance in the procurement of the instant indictment, request that the court order the prosecution to affirm or deny the use of any electronic or mechanical surveillance, whether by federal, state, or local law enforcement agencies. The defendants properly cite Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969), and Baker v. United States, 131 U.S.App.D.C. 7, 401 F.2d 958, 981–982 (1968), cert. denied, 400 U.S. 965, 91 S.Ct. 367, 27 L.Ed.2d 384 (1970).

The government's response is that all federal law enforcement agencies have been requested to supply information as to whether any defendant has been subjected to electronic surveillance. The government also stated that no agencies of the state of Louisiana or its political subdivisions participated in any way in this investigation. Accordingly, the motion for the government to affirm or deny the existence of clandestine surveillance by federal agencies is granted and the government's report when completed will be filed in the record. That part of the motion dealing with state or local agencies is denied.

### B.

The defendants' motion to examine and inspect the certification of the Attorney General to the Chief Judge of the Eastern District of Louisiana by which the special grand jury (which returned the instant indictment) was impaneled on August 2, 1971, pursuant to 18 U.S.C. § 3331, is granted and the government is ordered to make this document avail-

able. This request was also filed as a discovery motion under Rule 16.

### C.

As the court stated at the time of oral argument, two aspects of the defense motions to strike certain language in the indictment are granted. Accordingly, it is ordered that the Clerk of Court delete the word "Racketeering," which twice appears in the caption of this indictment and substitute therefor the word "Unlawful." It is further ordered that the Clerk delete part of the title description following the name and signature of John Wall at the conclusion of the indictment so that it will read "Attorney, Department of Justice." It is felt that these alterations are necessary in the interest of fairness and that they comport with Rule 7(c) and (d) of the Federal Rules of Criminal Procedure.

The additional request to strike the words "gambling type," which appear repeatedly throughout the indictment in the phrase, "Bally bingo gambling type pinball machines," is denied. It will be incumbent upon the government to prove at trial that these pinball machines are of the gambling variety. Sections 1952 and 1955 of Title 18, as utilized here, are directed at unlawful gambling businesses; hence, the gambling character of these machines is a crucial element of the government's case. This view is fortified by the government's assertion that some types of pinball machines are not of the gambling genre.

### D.

Defendants Boasberg, Caracci, and Pace, in view of their prior convictions and because those convictions can be used for impeachment of credibility if they should testify at trial, have moved the court to order the government either to divulge in advance if the convictions will be brought out at trial or simply to exclude evidence of the past convictions from cross-examination. Movants mistakenly rely on Luck v. United States, 121 U.S.App.D.C. 151, 348 F.2d 763 (1965), which held that, based on a statute applicable only to the District of Columbia, a trial judge had discretion as to whether impeaching evidence of a testifying defendant's prior convictions should be excluded. The determination concerned whether the potential for prejudice due to past convictions outweighed the benefit in the fact-finding process of having the jury informed of such convictions for its assessment of credibility.

*Luck*, or the so-called "Luck Rule," has never been accepted in the Fifth Circuit, Bendelow v. United States, 418 F.2d 42, 47–49 (5th Cir.), cert. denied, 400 U.S. 967, 91 S.Ct. 379, 27 L.Ed.2d 387 (1970), and recently was abandoned in the jurisdiction where it originated. Dixon v. United States, 287 A.2d 89 (D. C.App.1972). Accordingly, because there is no legal authority for the motions and because the court does not consider these movants to be in an extraordinary situation, the requests that the government disclose in advance its intentions with regard to past convictions or that the court at this time exclude the use of past convictions for impeachment purposes are denied.