**UNITED STATES of America,**
**Plaintiff,**

**v.**

**Elmo JONES, Defendant.**

**Cr. A. No. 7158.**

United States District Court,
E. D. Tennessee,
Northeastern Division.

April 5, 1971.

See, also, D.C., 317 F.Supp. 856.

---

* Both parties are to be commended for their papers on this motion which, in each instance, were excellent.

John L. Bowers, Jr., U. S. Atty., Edward E. Wilson, Asst. U. S. Atty., Knoxville, Tenn., for plaintiff.

J. Randall Shelton, Morristown, Tenn., for defendant.

## MEMORANDUM OPINION AND ORDER

NEESE, District Judge.

The defendant, who was convicted of the charges contained in count two of the indictment herein, has made a motion, renewing his earlier motion for entry of a judgment of acquittal, or, in the alternative, for a new trial, on the ground that the evidence relating to this count is insufficient to support his conviction. Rules 29(c), 33, Federal Rules of Criminal Procedure. Such evidence is as follows:

Mrs. Mary Elizabeth Lawson testified that she operates Trent's Grocery on Bull's Gap road in Hawkins County, Tennessee; that in the Fall of 1968, the defendant Mr. Jones bought gasoline there with a $20 bill; that same looked as if it had faded in a washing machine, but she was the only adult present at the time and did not mention her suspicions to the defendant; that she sent the bill by a child to her mother's home to obtain change and, during this interval, inquired of the defendant his name, which he freely gave; that, after the completion of the transaction and the departure of Mr. Jones, she compared the bill she had received with others on hand, obtained an unfavorable impression as to its validity, and kept it separate from other currency until she showed it to her father Mr. Trent; that Mr. Jones responded about one week afterward to Mr. Trent's request that he come by the store; that Mr. Trent and Mrs. Lawson relayed their suspicions concerning the bill to Mr. Jones, who agreed to take them and the bill in his automo-

bile to the chief of police at Rogersville, Tennessee, to ascertain its validity; that, as a result of this trip, the bill was delivered to the officer, and Mr. Jones replaced it with a valid $20 bill.

Mr. William Livesay, such chief of police, recounted the bringing of the bill to him, his suspicion that it was counterfeit, and his delivering it to the sheriff of his county, along with another suspicious $20 bill. Such sheriff, Mr. Dan Anderson, related his receipt of the two bills from Mr. Livesay, and his delivering same to an agent of the United States Secret Service. A successor to this agent testified that he received such bills from his predecessor in office and that, in his opinion, the bill identified as having been given to Mrs. Lawson by Mr. Jones is bogus.

Mr. Jones testified that he was 32 years of age at the time, a lifelong resident of rural Hawkins County, Tennessee (in which Trent's grocery is located), that its owner Mr. John Trent was a poker-game associate of his, and that he was employed regularly at a glass plant in the vicinity; that in the summer of 1968 he purchased $2 worth of gasoline, a soft drink and a package of cigarettes at such store and gave Mrs. Lawson the only bill he had, a $20 Federal Reserve note, to pay for his purchases; that he waited there until change could be obtained from Mrs. Lawson's home; that he returned to the store on request within a week. " * * * They said the bill I gave them—they didn't think it was any good. I told her [Mrs. Lawson] I would give her another one. She said, 'we will take it to the sheriff's office or police department and turn it over to them.' I said: 'That's all right'." That he (Mr. Jones) then drove in his car with Mrs. Lawson and Mr. Trent to see the chief of police at Rogersville, and gave Mrs. Lawson another $20 bill. Mr. Jones said, concerning the bill he had passed, "I didn't know it was counterfeit".

This is not a case where an accused found a favorable occasion to engage in the passing of counterfeit money without the apprehension of detection, Marson v. United States, C.A.6th (1953), 203 F.2d 904, 906 (reversed on another ground); nor a case where there was a rapid and repetitious passage of counterfeit money, especially at several different establishments, or where there was repeated use of large counterfeit bills, or an attempt to abandon counterfeit currency when detection was feared, Ruiz v. United States, C.A.5th (1967), 374 F.2d 619, 620[2]; not a situation where an accused gave untrue self-identification, United States v. Berkley, C.A.6th (1961), 288 F.2d 713, 714, certiorari denied (1961), 368 U.S. 822, 82 S.Ct. 41, 7 L.Ed. 2d 27; Lewis v. United States, C.A.8th (1967), 382 F.2d 232, 235[2]; the finding of counterfeit bills at a place where the accused could have thrown them away is not involved, United States v. Berkley, *supra*; and, there was no disposition by Mr. Jones of several notes seriatim with striking dispatch to pay for separate smaller purchases, United States v. Releford, C.A.6th (1965), 352 F.2d 36, 39[4], certiorari denied (1966), 382 U.S. 984, 86 S.Ct. 562, 15 L.Ed.2d 473. See also Miller v. United States, C.A.10th (1968), 392 F.2d 790.

■ ■ It is true that guilty knowledge and intent to defraud may be proved by circumstantial evidence. Baender v. Barnett (1921), 255 U.S. 224, 227, 41 S.Ct. 271, 65 L.Ed. 597, 598; Marson v. United States, *supra*, 203 F.2d at 906; United States v. King, C.A.6th (1964), 326 F.2d 415–416[2], certiorari denied (1964), 377 U.S. 957, 84 S.Ct. 1637, 12 L.Ed.2d 500; United States v. Carlson, C.A.3d (1966), 359 F.2d 592, 597 [13], certiorari denied sub nom. Bonomo v. United States (1966), 385 U.S. 879, 87 S.Ct. 161, 17 L.Ed.2d 106. However, the mere naked act of possessing and passing counterfeit money does not give rise to a legitimate inference of guilty knowledge, Marson v. United States, *supra*, 203 F.2d at 906[1]. It is difficult for the Court to comprehend the evidence on which the jury based its findings of fraudulent intent and guilty knowledge, except from the facts (a) that Mr. Jones

was accused of having passed a second bill in the same general period of time in the poker game, and (b) that the rebuttal witness Mr. Keasling testified that Mr. Jones had told him that he (Mr. Jones) knew that the bill passed at Trent's grocery was counterfeit.

Mr. Jones was acquitted by the jury of the charges relating to the poker-game bill contained in the third count of this indictment. Mr. Jones denied guilty knowledge and intent to defraud as to the Trent grocery bill. Although Mr. Keasling testified that Mr. Jones admitted to him several months afterward that he (Mr. Jones) knew that the Trent grocery bill was counterfeit, and although Mr. Jones did describe the bill he passed at this grocery as "a counterfeit bill", careful reading of what Mr. Jones actually said to Mr. Keasling does not support such interpretative conclusion of this witness.

Mr. Keasling, an agent of the Tennessee Bureau of Criminal Identification, was investigating the finding by a jailer of yet a third counterfeit bill on the person of Mr. Jones. This evidence was suppressed in pretrial action by the Court, and counsel could not develop the full import of the conversation between Messrs. Jones and Keasling without presenting before the jury evidence of a crime, which had been suppressed on constitutional grounds. Mr. Jones had denied fraudulent intent and guilty knowledge on direct examination. The prosecution undertook to rebut this denial for purposes of impeaching the defendant's credibility with the testimony of Mr. Keasling.

This rebuttal testimony should have been viewed by the jury with caution and weighed with great care. Mr. Keasling could have been mistaken about precisely what Mr. Jones admitted to him, or could have misunderstood what Mr. Jones actually said, or could have misquoted what Mr. Jones actually said, or, most likely, Mr. Jones may not have expressed clearly the meaning he intended to communicate to Mr. Keasling.

While Mr. Keasling did testify that Mr. Jones told him that he had passed a counterfeit bill at Trent's grocery and that he thought it was counterfeit, a careful reading of the testimony of Mr. Keasling reflects that at no time did Mr. Jones say to Mr. Keasling that *at* the time of the passage of such bill, Mr. Jones knew the bill was bogus. Mr. Keasling testified that on February 5, 1970 he had taken a statement from Mr. Jones. The following transpired:

\* \* \* \* \* \*

"Q. 'In his statement about the Trent possibly-counterfeit bill, did he state it was a counterfeit bill?'

"A. 'He did, yes.'

"Q. 'Did he state he went to that store; that he thought he had passed a counterfeit bill there?'

"A. 'He did; yes, sir.'

\* \* \* \* \* \*

After both counsel had concluded with this witness on this crucial point, the Court inquired:

"THE COURT: 'Mr. Keasling, do we understand that he told you at that time that he knew that the Trent bill was counterfeit? Is that what you are saying? I didn't quite understand; I know we are in a little ticklish situation.'

"THE WITNESS: 'Yes, sir.'

"THE COURT: 'He told you he knew it was counterfeit; specifically, what did he say along that line?'

"THE WITNESS: 'He said: "I picked up another counterfeit bill at John Trent's grocery at Bull's Gap road." '

"THE COURT: 'This was his language?'

"THE WITNESS: 'That was his language, right.' \* \* \* "

On surrebuttal examination, Mr. Jones said he didn't know how he "spoke it" when he gave Mr. Keasling the statement which the agent wrote down and Mr. Jones signed; but that he did not tell Mr. Keasling that he knew the bill pertaining to Trent's grocery store was

counterfeit, because " \* \* \* I didn't know it was counterfeit."

The Court overruled the defendant's motion for entry of a judgment of acquittal at the conclusion of the prosecution's proof, because there was evidence properly before the jury of two transactions within the same general period of time, in which Mr. Jones was said to have passed and uttered counterfeit $20 Federal Reserve notes bearing the identical serial number. The intent of Mr. Jones and any guilty knowledge on his part that these bills were bogus was to be determined from his acts and conduct and the other evidence before the jury applicable to this issue. The denial of this motion under the circumstances appertaining at that time was correct. York v. United States, C.C.A. 9th (1916), 241 F. 656, 658–659[4]. As has been aptly stated:

> \* \* \* \* \* \*
>
> It is a general rule of law that a distinct crime unconnected with that laid in the indictment cannot be given in evidence against a prisoner \* \*. However, there are certain exceptions which allow the proof of other offenses in order to establish the intent or motive of the defendant if one or more of these elements must be proved in order that the guilt of the defendant may be established. The offense here charged is one in which intent and knowledge are requisite elements of proof, and accordingly the conduct of the defendant at or near the time charged in the indictment is admissible. The intention of a person charged with a crime can hardly ever be shown by direct evidence and for this reason it acts of a similar nature \* \* \*.
>
> \* \* \* [T]he fact that the government has shown by a circumstance some evidence of knowledge on the part of the defendant of the act charged, does not preclude it from showing knowledge and intent by other acts. \* \* \*

United States v. Fawcett, C.C.A.3d (1940), 115 F.2d 764, 768, 132 A.L.R. 404, 408–409[11], [12], [13].

In acquitting Mr. Jones under the third count, the jury must have found either (a) that the defendant did not pass the offending bill in the poker game, or (b) that he did not do so with fraudulent intent or guilty knowledge. Thus, we are left with the evidence as to the Trent grocery bill. Mr. Jones admitted passing that bill; he admitted that it was, in fact, found to have been a counterfeit bill. However, none of the classic circumstances are shown by the evidence to have been present in such passage and uttering; so that, it must be assumed that the jury found fraudulent intent and guilty knowledge on his part from the testimony of the witness Mr. Keasling, in response to the Court's questioning, that Mr. Jones had admitted to Mr. Keasling that he (Mr. Jones) *knew* the Trent grocery bill was counterfeit *when* he passed and uttered it. This simply does not follow from what Mr. Keasling testified actually transpired between the two men.

The Court agrees with the prosecution that the verdict of the jury herein must be sustained if supported by substantial evidence, including reasonable inferences drawn therefrom, as viewed in the light most favorable to the prosecution. Glasser v. United States (1942), 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680, 704 (headnote 17). Being unable to discern such substantialness in this record, however, the Court hereby GRANTS the defendant's motion for a new trial.

The clerk will reassign this action for trial, but the United States attorney should review the record and make a pretrial determination whether, under the views expressed herein, he wishes to prosecute the defendant further, if there is no additional evidence of fraudulent intent and guilty knowledge available.