**UNITED STATES** of America, Plaintiff,

v.

**John J. FELICE, Jr., Defendant.**

**Crim. No. 78–81.**

United States District Court,
N. D. Ohio, E. D.

Memoranda Opinions and Orders
Oct. 23, 1978.

On Motion to Quash Subpoena
Nov. 6, 1978.

On Motion for Judgment of Acquittal or
New Trial Dec. 15, 1978.

Abraham M. Poretz, Special Attorney, U. S. Dept. of Justice, Washington, D. C., for plaintiff.

Robert J. Rotatori, and Gerald A. Messerman, Cleveland, Ohio, for defendant.

## MEMORANDA OPINIONS AND ORDERS

NEESE, District Judge.

The defendant Mr. Felice moved herein on August 24, 1978 for the disclosure of certain portions of the record of the grand jury proceedings [1] which led to the indict-

---

1. Specifically, the defendant seeks disclosure of the following portions of the grand jury proceedings:

(1) the prosecutor's recitation of the indictment and his summary or description of the charges contained in the proposed indictment;

(2) the prosecutor's instructions to the grand jury concerning the law applicable to Counts II through XII, inclusive, of the indictment;

(3) the instructions of the prosecutor concerning the manner in which the grand jury was to vote on the indictment proposed by the prosecutor;

(4) any recommendations or arguments made by the prosecutor to the grand jury;

(5) the vote of the grand jury on the indictment;

(6) any testimony of Mr. Louis J. Aratari and/or testimony concerning statements allegedly made by such individual; and,

(7) any discussion which may have occurred concerning newspaper articles or television or

ment returned against him herein. Rule 6(e), Federal Rules of Criminal Procedure.[2] The motion lacks merit in its entirety.

" * * * The requirement of Rule 6(e) is that the defendant must make 'showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury.' In the absence of such a showing, the proceedings of a grand jury are required to be kept secret. * * * " *United States v. Fife,* C.A. 6th (1976), 573 F.2d 369, 372[1]. Mr. Felice contends that several possible irregularities may have taken place before the grand jury:

(1) that erroneous instructions were given by the government as to the elements of the offenses charged in counts II–XII, inclusive, of the indictment;

(2) that the grand jury failed to vote separately on each count of the indictment;

(3) that the government generated pre-indictment publicity so as to substantially prejudice his position before the grand jury;

(4) that the government withheld or failed to direct the attention of the grand jurors to certain exculpatory evidence; and

(5) that an unsworn statement of Mr. Louis J. Aratari was used against him before the grand jury (which statement was substantially repudiated under oath on the very day the indictment herein was returned) rather than Mr. Aratari's being presented personally as a witness.

■ Counsel for the government represents to the Court that no record was made of any instructions given the grand jury by the prosecution. It was not required that such a record be made of any remarks made by the prosecuting attorney. *United States v. Perkins,* D.C.Ohio (1974), 383 F.Supp. 922, 929[18]; see also *United States v. Barone,*

C.A. 6th (1978), 584 F.2d 118, 125 (1978) and *United States v. Hensley,* C.A. 6th (1967), 374 F.2d 341, 352[19]. Even if counsel for the government misled the grand jury by giving them faulty instructions, such would not appear to be a ground for the dismissal of the indictment. The conduct of the prosecutor in obtaining an indictment is virtually unreviewable by the federal courts. 8 Moore's Federal Practice (2d ed.) 6–66, ¶ 6.04.

■ It was not necessary that the grand jurors vote separately on each count of the indictment. *United States v. Winchester,* D.C.Del. (1975), 407 F.Supp. 261, 278[10]; *United States v. Perkins, supra,* 383 F.Supp. at 930[21]; *United States v. Bally Manufacturing Corporation,* D.C.La. (1972), 345 F.Supp. 410, 421[13]. The only requirement in this regard was that the indictment itself be based upon the concurrence of 12 or more grand jurors. *Bally, idem.*

■ Professor Moore notes that it does not appear that any court has ever dismissed an indictment on the ground of adverse publicity toward a defendant. 8 Moore's Federal Practice (2d ed.) 6–61 ¶ 6.03[4]. The fact that a grand jury may be induced to take action by newspaper reports " * * * forms a continuum with its historic function of ferreting out crime and corruption, and is in no way inconsistent with its duty to decide on and in accordance with the evidence adduced before it. * * * " *United States v. Nunan,* C.A. 2d (1956), 236 F.2d 576, 593, certiorari denied (1956), 353 U.S. 912, 77 S.Ct. 661, 1 L.Ed.2d 665. The grand jury's sources of information are widely drawn, and the validity of an indictment is not affected by the character of the evidence considered. *United States v. Calandra* (1974), 414 U.S. 338, 344–345, 94 S.Ct. 613, 38 L.Ed.2d 561, 569[7].

radio reports relating to a statement made by the government's attorney in charge of the Cleveland "strike force" on April 24, 1978.

2. " * * * [M]atters occurring before the grand jury [may be disclosed] only * * * when permitted by the court at the request of the defendant upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury. * * * " Rule 6(e), Federal Rules of Criminal Procedure.

■ The Court considered a newspaper clipping from the *Cleveland Press* of April 25, 1978 concerning a report of the testimony of government attorney Mr. Douglas P. Roller before a Senate subcommittee. Such does not demonstrate sufficient adverse publicity toward Mr. Felice as to make even a colorable claim for the dismissal of the indictment herein. The name of Mr. Felice was not mentioned in such newspaper account; it is reported therein that Mr. Roller declined to be more specific in public when asked to do so by Senator John Glenn.

■ Assuming *arguendo* that the government's personnel did generate highly prejudicial publicity regarding Mr. Felice, and further assuming that members of the grand jury were aware of that publicity during their deliberations, the disclosure of the grand jury proceedings herein would not indicate what effect, if any, such publicity had on the grand jurors. Even if the defendant were allowed access to the grand jury minutes, such could hardly afford either the Court or counsel for the defendant " * * * any basis for the objective assessment of the existence of prejudice toward [Mr. Felice] in the minds of the grand jurors. * * * " *Silverthorne v. United States*, C.A. 9th (1968), 400 F.2d 627, 633–634. The Court will fully protect the right of Mr. Felice to a fair trial by ensuring through voir dire that a fair and impartial jury is empaneled, regardless of any prejudicial publicity. See *United States v. Johnson*, C.A. 6th (1978); 584 F.2d 148, 155.

■ Mr. Felice cannot challenge the indictment herein " * * * on the ground that information which [he] considered favorable to his defense was not presented to the grand jury. * * * " *United States v. Ruyle*, C.A. 6th (1975), 524 F.2d 1133, 1136[4], certiorari denied (1976), 425 U.S. 934, 96 S.Ct. 1664, 48 L.Ed.2d 175; *accord*

*United States v. Kennedy*, C.A. 9th (1977), 564 F.2d 1329, 1338[7, 8]; see also *United States v. Mandel*, D.C.Md. (1976), 415 F.Supp. 1033, 1040[5]; *contra United States v. Phillips Petroleum Co.*, D.C.Okla. (1977), 435 F.Supp. 610, 619–620[6], [7], [8]. While the government's counsel may have been under an ethical, see ABA Standards Relating to the Prosecution Function § 3.6(b), or administrative, see U.S. Attorney's Manual § 9–11.334, obligation to bring certain exculpatory matters to the attention of the grand jury, supervision of these duties are best left to agencies other than the federal courts.[3] *Cf. Newman v. United States*, C.A. D.C. (1967), 382 F.2d 479 (opinion by then Circuit Judge Burger).

■ It does not appear to the Court that it was improper for the government to have used an unsworn statement of Mr. Aratari as evidence against Mr. Felice at the grand jury proceedings. " * * * [N]either the Fifth Amendment nor any other constitutional provision prescribes the kind of evidence upon which grand juries must act. * * * " *Costello v. United States* (1956), 350 U.S. 359, 362, 76 S.Ct. 406, 408, 100 L.Ed. 397, 401–402. " * * * [T]he validity of an indictment is not affected by the character of the evidence considered [by the grand jury]. Thus, an indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence. * * * " *United States v. Calandra, supra*, 414 U.S. at 344–345, 94 S.Ct. at 618, 38 L.Ed.2d at 569[7]. The indictment herein " * * * is valid even though it may have been based solely upon hearsay evidence. * * * " *United States v. Barone, supra*, 584 F.2d at 123. Any inconsistency between the statement of Mr. Aratari before the grand jury and his testimony in the state trial is irrelevant to an indictment, good on its face.[4] *United States v. Rosen-*

3. At trial, Mr. Felice will be given a full and fair opportunity to present any evidence he contends is exculpatory. A motion to dismiss the indictment is not the appropriate vehicle by which a defendant may challenge the truth of the charges contained therein. *Universal Milk*

*Bottles Service v. United States*, C.A. 6th (1951), 188 F.2d 959, 962[4–6].

4. The Court considered also the possibility that Mr. Felice might have a need for disclosure of the "testimony" of Mr. Aratari before the grand jury other than to show that grounds may exist

*stein*, C.A. 2d (1970), 434 F.2d 640, 641, certiorari denied (1971), 401 U.S. 921, 91 S.Ct. 910, 27 L.Ed.2d 825.

■ Motions, such as this, seeking the disclosure of proceedings before a grand jury "* * * are rarely granted." 8 Moore's Federal Practice (2d ed.) 6–75, ¶ 6.05; see also 1 Wright, Federal Practice and Procedure: Criminal 187, § 108. The burden was on the defendant Mr. Felice "* * * to show that 'a particularized need' exists for the [grand jury] minutes which outweighs the policy of secrecy. * * *" *Pittsburgh Plate Glass Co. v. United States* (1959), 360 U.S. 395, 400, 79 S.Ct. 1237, 1241, 3 L.Ed.2d 1323, 1327 (headnote 6). Mr. Felice has not demonstrated that grounds may exist for a motion to dismiss the indictment herein because of matters occurring before the grand jury. *United States v. Fife, supra*, 573 F.2d at 372[1]. His mere conclusions, without factual support, regarding possible irregularity of the grand jury proceedings do not provide a sufficient showing of the existence of grounds for a motion to dismiss the indictment. *Ibid.*, 573 F.2d at 372[2].

Accordingly, the motion of the defendant for the disclosure of portions of the grand jury proceedings hereby is

DENIED.

Mr. Felice also moved the Court to dismiss the indictment herein. In support of that motion, it is contended that irregularities in the grand jury proceedings (primarily the result of alleged misconduct on behalf of the government) and the post-indictment misconduct of the prosecution deprived him of his right to due process of law, Constitution, Fifth Amendment.

■ A strong presumption attaches to the regularity of a grand jury's proceedings, and the burden was on Mr. Felice to have demonstrated that an irregularity occurred. *United States v. Woods*, C.A. 6th (1976), 544 F.2d 242, 250[6]. (The improprieties in the grand jury proceedings, alleged by the defendant in support of this motion, have previously been considered by the Court in connection with his motion to disclose the grand jury minutes.) As heretofore indicated, those purported irregularities are not sufficient to require dismissal of the indictment. "* * * An indictment returned by a legally constituted and unbiased grand jury, * * * if valid on its face, is enough to call for trial of the charge on the merits. The Fifth Amendment requires nothing more. * * *" *Costello v. United States, supra*, 350 U.S. at 363, 76 S.Ct. at 409, 100 L.Ed. at 402–403 (headnote 5), quoted with approval in *United States v. Barone, supra*, 584 F.2d at 124, and *United States v. Ruyle, supra*, 524 F.2d at 1135. The defendant is not entitled to a preliminary trial concerning the adequacy of the grand jury proceedings herein. *United States v. Barone, supra*, 584 F.2d at 125, citing *Costello v. United States, supra*.

■ Mr. Felice contends furthermore that he is entitled to a dismissal of the indictment herein because the prosecution (or some other government employee or employees) "leaked" to the press (either intentionally or by accident) the sealed indictment herein prior to his arrest. A court may order that an indictment be kept secret until the defendant is in custody or has been released pending trial. Rule 6(e)(3), Federal Rules of Criminal Procedure. Thereupon, the clerk shall seal the indictment and no person is permitted to disclose the return of such indictment except when necessary for the issuance and execution of a warrant or summons. *Idem.* "* * * The language of the rule suggests that the

for a motion to dismiss the indictment herein. See *Dennis v. United States* (1968), 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973. However, the defendant has not shown a particularized need therefor, and thus, is not entitled to the disclosure of that portion of the grand jury proceedings. *United States v. Stephens*, C.A. 6th (1974), 492 F.2d 1367, 1375[12], certiorari denied (1974), 419 U.S. 852, 95 S.Ct. 93, 42

L.Ed.2d 83 and 419 U.S. 874, 95 S.Ct. 136, 42 L.Ed.2d 114; *United States v. Hensley, supra*, 374 F.2d at 352[20]. If Mr. Aratari appears as a witness called by the prosecution at trial, the defendant would be entitled, upon motion, to a copy of any grand jury testimony of such witness which relates to the subject matter as to which he has testified. 18 U.S.C. § 3500(b), (e)(3).

only purpose of this provision is to prevent the flight of a defendant or his associates. * * * " 8 Moore's Federal Practice (2d ed.) 6–83, ¶ 6.05; see also *United States v. Smaldone*, C.A. 10th (1973), 484 F.2d 311, 320[15], certiorari denied (1974), 415 U.S. 915, 94 S.Ct. 1411, 39 L.Ed.2d 469. (" * * * [A]n indictment may under Rule 6(e) be kept secret in order to avoid fleeing from justice. * * * ")

This Court does not condone any breach of the clear mandate of Rule 6(e)(3), *supra*, by anyone, if in fact such did occur.[5] However, there are appropriate measures which the Court can take in this situation. The defendant cites no authority authorizing this Court to dismiss the indictment herein on the ground that it was "leaked," and the Court is aware of none. That simply is not the proper remedy.

It is also alleged in support of the motion that the prosecution has deprived Mr. Felice's counsel of access to the government's aforenamed prospective witness Mr. Aratari. It is undisputed herein that Mr. Aratari is a crucial witness as to count I of the indictment herein; that he is in the so-called "protective custody" of the prosecution; and that counsel for Mr. Aratari has indicated that he has no personal objection to his client's being interviewed by counsel for Mr. Felice, although the ultimate decision must be made by Mr. Aratari himself. Nevertheless, the government has not afforded counsel for the defense access to Mr. Aratari on the ground that Mr. Aratari advised counsel for the government that he was not desirous of such an interview.

 It is clear in this circuit that witnesses are neither the property of the government nor of the defendant, but that a witness is free to talk with a lawyer for the adversary party or not talk with such counsel. *United States v. Matlock*, C.A. 6th (1974), 491 F.2d 504, 506[3–5], certiorari denied (1974), 419 U.S. 864, 95 S.Ct. 119, 42 L.Ed.2d 100; *United States v. Scott*, C.A. 6th (1975), 518 F.2d 261, 267–268[9–12]. " * * * A defendant is entitled to have *access* [emphasis original] to any prospective witness although such right of access may not lead to an actual interview. * * * 'It is true that any defendant has the right to attempt to interview any witness he desires. It is also true that any witness has the right to refuse to be interviewed, if he so desires (and is not under or subject to legal process).' * * * Certainly, the prosecution has no right to interfere with or prevent a defendant's access to a witness (absent any overriding interest in security). The importance of the right of access is somewhat tempered by the witness' equally strong right to refuse to say anything. * * * " *Ibid.*, 518 F.2d at 268 (citations and footnote references omitted).

 Herein, the government has no right to deny counsel for Mr. Felice access to Mr. Aratari, even though such access may prove fruitless. Whether Mr. Aratari will consent to giving such an interview, and the extent of any interview, are questions which are to be determined by Mr. Aratari and his counsel and do not relate to the matter of mere access to such potential witness. Any desire of Mr. Aratari to decline such an interview should be conveyed directly to counsel for Mr. Felice, either by Mr. Aratari or through his counsel and not via counsel for the government.

---

5. In a letter dated June 6, 1978 from government counsel Mr. Olah, Esq. to counsel for Mr. Felice one possible explanation for the "leaking" of the indictment was offered:

" * * * When the indictment was originally returned by the Grand Jury, it was not sealed since it was determined that Mr. Felice could be apprehended pursuant to an arrest warrant without the necessity of sealing the indictment. Within a short while after the return it became apparent that Mr. Felice's whereabouts were unknown, and that his arrest could not be effected as quick-

ly as originally thought. Therefore, after the return a request was made by this office of the Clerk's Office to seal the indictment until further notification. I have learned that in the interim period, between the return and the request to seal the indictment, that it was in the Clerk's Office in an unsealed condition for a period of time, and that representatives of the press and other media were present in the Office of the Clerk during that time. It is conceivable that the fact of Mr. Felice's indictment was learned during that time. * * * "

. Although it appears that the government has improperly denied the defense access to Mr. Aratari, there is ample time prior to trial to remedy any prejudice which Mr. Felice may have suffered therefrom. Accordingly, it hereby is

ORDERED that the prosecution forthwith make Mr. Louis J. Aratari available to counsel for the defendant at a time and place to be mutually agreed upon by such counsel. Thereat, counsel for Mr. Felice shall have the opportunity, outside the presence of any representative of the government, to attempt to obtain an interview with Mr. Aratari. Counsel for Mr. Aratari shall be notified by the prosecution of the time and place of such meeting and shall have the right to be present with his client at all times. If Mr. Aratari declines to grant an interview with counsel for the defendant, or if at any time he declines to continue any interview so granted, the meeting shall then terminate forthwith. Such decisions, however, are to be made by Mr. Aratari (after private consultation with his attorney, if he desires) and are to be conveyed to counsel for Mr. Felice either by Mr. Aratari directly or through his counsel. The clerk will serve by postal service a copy of this portion of this order on counsel for Mr. Aratari, who is represented to the Court to be Harry J. Caito, Esq. of Cleveland, Ohio.

 There is no merit to the defendant's final contention, that the indictment should be dismissed because conduct of the government denied him access to counsel of his own choosing for a period of approximately 2 weeks. Such was the result of an order of this Court concerning a possible conflict of interest involving such counsel.

The indictment herein was returned on April 26, 1978, and the case is assigned for trial to commence November 6, 1978. Mr. Felice could hardly be said to have been prejudiced by the Court's order prohibiting Mr. Rotatori from contacting Mr. Felice for that 2-week period. Mr. Felice and his counsel have since had ample time to confer. *Geders v. United States* (1976), 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592, relied on by Mr. Felice, is inapposite.

As to his motion to dismiss the indictment, Mr. Felice requested an evidentiary hearing " * * * for the purpose of determining the truth of the allegations set forth [in such motion]. * * *" In considering that motion the Court has assumed that the factual allegations set forth in the motion were true. Even so, however, Mr. Felice, as a matter of law, is not entitled to the dismissal of the indictment herein. The Court is " * * * not required to permit the presentation of evidence which would have no effect on its ruling of law. * * *" *United States v. Frazier*, C.A. 6th (1978), 584 F.2d 790, 794. Accordingly, the request for an evidentiary hearing on such motion hereby is

DENIED.

For the reasons stated hereinabove, the motion of the defendant for a dismissal of the indictment herein hereby is

DENIED.

ON MOTION TO QUASH SUBPOENA

 Upon application of the prosecution, the clerk issued a subpoena, Rule 17(a), Federal Rules of Criminal Procedure, commanding Mr. Thomas Lanci to appear at the time and place scheduled for commencement of this trial for the purpose of testifying herein.[1] Mr. Lanci moved the Court " * * * to quash and hold void * * *" such subpoena. That motion lacks merit on its face and hereby is

DENIED.[2]

" * * * [I]t is every man's duty to give testimony before a duly constituted tribunal unless he invokes some valid legal exemption in withholding it. * * *"

---

1. This subpoena only commands the presence of Mr. Lanci " * * * to testify * * *" as a witness in this action; it does not require him to produce documents or objects, as he alleges in his motion.

2. The motion of Mr. Lanci for a hearing on this motion and for an award of his costs therefor hereby is DENIED.

*Ullmann v. United States* (1956), 350 U.S. 422, 439, n.15, 76 S.Ct. 497, 507, n.15, 100 L.Ed. 511, 525, n.15 (headnote 25), rehearing denied (1956), 351 U.S. 928, 77 S.Ct. 777, 100 L.Ed. 1457. Mr. Lanci contends " * * * that he will invoke his constitutional privilege of not testifying herein for the primary reason that it will be a violation of his rights against self-incrimination, * * * " Constitution, Fifth Amendment.[3]

Unlike a defendant in a criminal case, Mr. Lanci, as a mere witness, has no right under the self-incrimination provision of the Fifth Amendment to refuse to take the witness stand. *United States v. Stephens*, C.A. 6th (1974), 492 F.2d 1367, 1374[6–8], certiorari denied (1974), 419 U.S. 852, 95 S.Ct. 93, 42 L.Ed.2d 83 and *sub nom. Silverman v. United States* (1974), 419 U.S. 874, 95 S.Ct. 136, 42 L.Ed.2d 114. " * * * The privilege against self-incrimination may not be asserted in advance of questions actually propounded. * * * In no event may the witness refuse to be sworn. * * * " *United States v. Harmon*, C.A. 6th (1964), 339 F.2d 354, 359[3], certiorari denied (1965), 380 U.S. 944, 85 S.Ct. 1025, 13 L.Ed.2d 963, rehearing denied (1965), 380 U.S. 989, 85 S.Ct. 1330, 14 L.Ed.2d 282.

Mr. Lanci will be given ample opportunity to invoke his privilege against self-incrimination at that time if he is called upon to give specific testimony during the course of this trial.

### ON MOTION FOR JUDGMENT OF ACQUITTAL OR NEW TRIAL

The jury returned a verdict herein of guilty as to count XII of the indictment.[1] The defendant Mr. Felice moved timely for the entry of a judgment of acquittal or, alternatively, for a new trial as to that count. Rules 29(c), 33, Federal Rules of Criminal Procedure. The motion lacks merit in both its alternatives.

3. Mr. Lanci alleges also in conclusory fashion that compliance with such subpoena will violate also his rights under the Constitution, First, Fourth, Sixth, and Ninth Amendments.

1. There were 12 counts in the indictment. As to counts II through IX, inclusive, the Court, on the motion of the defendant, ordered the entry

The standard by which the Court is to be guided in passing on a post-verdict motion for the entry of a judgment of acquittal is the same as that to be used when such a motion is made pre-verdict. See *United States v. Suarez*, C.A. 2d (1974), 505 F.2d 166. The Court is required to order the entry of judgment of acquittal " * * * if the evidence is insufficient to sustain a conviction. * * * " Rule 29(a), Federal Rules of Criminal Procedure. In determining the sufficiency of the evidence to withstand the motion of Mr. Felice:

> * * * the evidence and all reasonable inferences that may be drawn therefrom must be viewed in the light most favorable to the government. * * * And if under such view of the evidence it is concluded that a reasonable mind might fairly find guilt beyond a reasonable doubt, the issue [was] for the jury. However, if under such view of the evidence it is concluded there must be some doubt in a reasonable mind, the motion for acquittal must be sustained. * * *

*United States v. Collon*, C.A. 6th (1970), 426 F.2d 939, 942[2]; *accord United States v. Prieur*, C.A. 6th (1970), 429 F.2d 1237, 1238[2]. Furthermore, it is clear that:

> * * * It is not for the judge, ruling on a motion for judgment of acquittal to assess the credibility of witnesses, weigh the evidence, or draw inferences of fact from the evidence. These are functions of the jury. The court is limited to deciding whether a sufficient showing has been made to go to the jury on the basis of the view of the evidence and inferences therefrom most favorable to the prosecution. Ordinarily the court must disregard any countervailing testimony that may have been offered, although there may be cases where uncontroverted evidence brought out as part of the defend-

of a judgment of acquittal after the government's evidence was closed. Rule 29(a), Federal Rules of Criminal Procedure. Of the remaining 3 counts, the jury returned verdicts of not guilty on counts I and XI and a verdict of guilty as charged under count XII.

ant's case would require a reasonable juror to have a doubt about guilt, and thus justifies a judgment of acquittal. * * * 2 Wright, Federal Practice and Procedure: Criminal 259–260, § 467 (footnote reference omitted).

■ A grand jury charged in count XII that Mr. Felice had embezzled, stolen, and unlawfully and wilfully abstracted and converted to his own use and to the use of another the sum of $332.80 of the moneys and funds of his local union's health and welfare fund[2] in violation of 18 U.S.C. § 664[3] and § 2.[4] The evidence relating to this count was essentially undisputed.

Mr. Felice was in Honolulu, Hawaii on November 17, 1975 attending as an authorized representative of his local union's welfare fund, a conference there of the National Foundation of Employee Benefit Plans. He purchased on that date from Pex Hawaii a woman's coral ring for $332.80. Mr. Felice paid for necessary accommodations and services on this trip by the use of the local union's American Express credit card. The procedure was for the local union to pay the American Express account initially and obtain reimbursement from the union's welfare fund for the amounts attributable to the latter's proper expenses. In addition to the local union's American Express card, Mr. Felice also held a personal credit card with the same company. He paid for the aforementioned ring with the use of his personal card.

On December 30, 1975 the American Express charges came to Ms. Alda Grady, the local union's bookkeeper, as she gathered documents relating to Mr. Felice's Honolulu trip for the purpose of seeking reimbursement from the local union's welfare fund for expenses properly referable to it. Because of an involved set of circumstances, the Pex Hawaii charge to Mr. Felice had been billed by American Express to La Galleria Original, a companion firm. That name and the amount of the charge indicated to Ms. Grady that this represented a restaurant bill which had been charged by Mr. Felice on his personal credit card. She undertook to locate Mr. Felice to verify her understanding, but he was unavailable to her momentarily. Thereupon, Ms. Grady paid the American Express charges by a check drawn on the treasury of the local union and (mechanically) signed as its secretary-treasurer by Mr. Felice. By the time Mr. Felice was again available to Ms. Grady, the matter had slipped her mind and she made no inquiry concerning it.

Subsequently, the executive board of the local union made its periodic review of its expenditures on January 13, 1976 and approved this and other expenditures of the local union. Mr. Felice was a member of that board and presided at such meeting.

* * * * * *

---

2. In full, this count charged that:

* * * * * *

"On or about the 30th day of December, 1975, in the Northern District of Ohio, Eastern Division, JOHN J. FELICE, JR., the defendant herein, did embezzle, steal, and unlawfully and willfully abstract and convert to his own use and the use of another the sum of Three Hundred Thirty-two Dollars and Eighty Cents ($332.80) of the moneys and funds of Teamsters Union Local No. 293 Health and Welfare Fund, Cleveland, Ohio, an employee welfare benefit plan established and maintained by Teamsters Union Local No. 293, Cleveland, Ohio, an employee organization representing employees engaged in commerce and in an industry and activity affecting commerce within the purview of the Welfare and Pension Plans Disclosure Act, as amended (Chapter 10, Title 29, United States Code).

"In violation of Title 18, United States Code, §§ 664 and 2."

3. "* * * Any person who embezzles, steals, or unlawfully and willfully abstracts or converts to his own use or to the use of another, any of the moneys [or] funds * * * of any employee welfare benefit plan * * * or any fund connected therewith, shall be fined not more than $10,000, or imprisoned not more than five years, or both. * * *" 18 U.S.C. § 664.

4. "* * * (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal. * * *" 18 U.S.C. § 2.

On the same date, the trustees of the local union's health and welfare fund issued its check, also over the (mechanical) signature of Mr. Felice, to the local union as reimbursement for its payment of the aforementioned ring. From these facts, the jury was warranted fully in concluding that Mr. Felice had profited personally to the tune of $332.80 at the expense of his union's health and welfare fund.[5]

It was an essential element of the offense charged in count XII that Mr. Felice had a fraudulent intent to deprive his local union's health and welfare fund of its moneys or funds. *United States v. Santiago*, C.A. 2d (1976), 528 F.2d 1130, 1135[13], certiorari denied (1976), 425 U.S. 972, 96 S.Ct. 2169, 48 L.Ed.2d 795; see *United States v. Bane*, C.A. 6th (1978), 583 F.2d 832, 835–836[2].[6] As mentioned previously, it was the contention of Mr. Felice that the ultimate payment for his ring by the health and welfare fund was the result of mistake, accident or inadvertence and, thus, that he did not have such fraudulent intent. By so contending, Mr. Felice put directly in issue his intent. See *United States v. Ring*, C.A. 6th (1975), 513 F.2d 1001, 1003[1, 2], 1008[17].

" * * * Where [the] intent of the accused is an ingredient of the crime charged, its existence is a question of fact which must be submitted to the jury. * * * " *Morissette v. United States* (1952), 342 U.S. 246, 274, 72 S.Ct. 240, 255, 96 L.Ed. 288, 306 (headnote 15); *accord: United States v. Bryant*, C.A. 6th (1972), 461 F.2d 912, 920[12]; *United States v. Luxenberg*, C.A. 6th (1967), 374 F.2d 241, 249[16]; *United States v. Farber*, C.A. 6th (1964), 336 F.2d 586, 588[4]. The requirement that the government prove beyond a reasonable doubt this essential element of the crime charged was emphasized by the Court in its charge to the jury. First, the jury was instructed generally that:

* * * as regards more serious crimes, such as are charged in this case, specific intent must be proved before there can be a conviction.

As the term itself suggests, specific intent requires more than a mere general intent to do something.

A person who knowingly does an act which the law forbids, or knowingly fails to do an act which the law requires, intending with evil motive or bad purpose either to disobey or to disregard the law, may properly be found to have acted with specific intent.

An act, or failure to act, is done knowingly if it is done voluntarily and purposely, and not because of mistake or inadvertence, or other innocent reason.

It is seldom that intent can be proved by any means other than circumstantial evidence, because, although witnesses may see and hear, and thus be able to come into court and give direct evidence of what a defendant has said or done, there, of course, can be no eye-witness account of the state of mind with which the acts were done or omitted. On the other hand, what a defendant does, or fails to do, may indicate intent, or lack of intent, to commit the offense charged.

It is reasonable to infer that a person ordinarily intends that natural and probable consequences of acts which he knowingly does, or does not do. So, if you find it is justified under all the proof, you may draw the inference that Mr. Felice intended all of the consequences resulting from any act which he knowingly did, or did not do, which anyone standing in like circumstances, and possessing similar knowledge as Mr. Felice should have reasonably expected to have followed.

In determining the issue as to intent, you are entitled to consider any state-

---

5. This fund belonged to the participants therein and their beneficiaries. *United States v. Santiago, infra*, 528 F.2d at 1133[2]. The intended purpose of 18 U.S.C. § 664 was to preserve such funds " * * * for the protection of those entitled to their benefits. * * * " *Idem.*

6. *Bane* involved a prosecution and conviction under 29 U.S.C. § 501(c). However the pertinent language of 18 U.S.C. § 664 is virtually identical with that in 29 U.S.C. § 501(c).

ments made, and acts done or not done by Mr. Felice as well as all facts and circumstances in evidence which may aid you in determining his state of mind.

\* \* \* \* \* \*

Next, the jury was told that, before it could find that Mr. Felice violated either of the embezzlement statutes under which he was charged, " \* \* \* the government must have proved beyond a reasonable doubt \* \* \* that Mr. Felice had a fraudulent intent to deprive the union of its funds. \* \* \* " This requirement was further defined for the jury: " \* \* \* To act with 'intent to defraud' means to act wilfully, and with the specific intent to deceive or cheat: ordinarily for the purpose of either causing some financial loss to another, or bringing about some financial gain to oneself. \* \* \* " And finally, in summarizing the elements of the offense charged in count XII, the Court charged the jury that, before Mr. Felice could be convicted under this count, the burden was on the government to have proved beyond a reasonable doubt *inter alia* that Mr. Felice did the acts described in such count, and " \* \* \* that he did so with the fraudulent intent to deprive the union's health and welfare fund of its funds. \* \* \* "

■■■ As to the count under which he was convicted, the crucial issue for the jury to resolve was whether Mr. Felice possessed the requisite intent to defraud. Of course, that intent could have been proven by circumstantial evidence, and the jury was entitled to consider all the surrounding circumstances in making this determination. *United States v. Luxenberg, supra,* 374 F.2d at 249[15–18]. " \* \* \* Intent \* \* \* is a subjective element the existence of which usually must be inferred from evidence of overt acts. \* \* \* " *United States v. Bryant, supra,* 461 F.2d at 921. The Court instructed the jury properly as to this essential element, and it must be presumed that the jury conscientiously observed those instructions. *Shotwell Mfg. Co. v. United States* (1963), 371 U.S. 341, 367, 82 S.Ct. 448, 9 L.Ed.2d 357, 375 (headnote 22), rehearing denied (1963), 372 U.S.

950, 83 S.Ct. 931, 9 L.Ed.2d 975. Even a reckless disregard by Mr. Felice of the interests of the union's health and welfare fund would have been sufficient evidence to warrant the jury's finding of an intent to defraud it. *United States v. Luxenberg, supra.* The jury was not bound by what might have seemed to the Court inescapable logic. *Morissette v. United States, supra,* 342 U.S. at 276, 96 L.Ed.2d at 307.

At the conclusion of the government's proof, counsel for the defendant, Mr. Messerman, Esq., conceded that as to count XII " \* \* \* a jury question [was] presented. \* \* \* " The Court agreed then and also at the conclusion of all the proof. It is still the opinion of the Court that there was sufficient evidence to submit this count to the jury. Accordingly, the motion of the defendant for a judgment of acquittal hereby is

OVERRULED.

■■■ This Court may grant Mr. Felice a new trial as to count XII of the indictment herein if such " \* \* \* if required in the interest of justice. \* \* \* " Rule 33, Federal Rules of Criminal Procedure. " \* \* \* If the court reaches the conclusion that the verdict is contrary to the weight of the evidence and that a miscarriage of justice may have resulted, the verdict may be set aside and a new trial granted. \* \* \* " 2 Wright, Federal Practice and Procedure: Criminal 486, § 553. Although it has been said that, in considering such a motion, the trial judge sits as the 13th juror, the discretion of the court should be exercised with caution, and the power to grant a new trial on this ground should be invoked only in an exceptional case where the evidence preponderates heavily against the verdict. *Ibid.,* at 487.

" \* \* \* [T]he verdict of the jury herein must be sustained if supported by substantial evidence, including reasonable inferences drawn therefrom, as viewed in the light most favorable to the prosecution. \* \* \* " *United States v. Jones,* D.C. Tenn. (1971), 328 F.Supp. 556, 560[6], citing *Glasser v. United States* (1942), 315 U.S. 60,

80, 62 S.Ct. 457, 86 L.Ed. 680, 704 (headnote 17). The Court, being of the opinion that there was substantial evidence to support the jury verdict, and that this is not such an exceptional case so as to require a new trial in the interest of justice, the alternative motion of Mr. Felice for a new trial hereby is

OVERRULED.